**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED MARCH 26, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                               No. 141381

LAMAR EVANS,

      Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

ZAHRA, J.

This case presents the question whether the Double Jeopardy Clauses of the state and federal constitutions bar defendant's retrial. Defendant was accused of burning a vacant house and charged on that basis with burning other real property in violation of MCL 750.73. There is no dispute that the trial court wrongly added an extraneous element to the statute under which defendant was charged. Specifically, the trial court ruled that the prosecution was required to present proof that the burned house was not a dwelling, which is not a required element of MCL 750.73. As a result of the trial court's

erroneous addition of this extraneous element to the charged offense, it granted defendant's motion for a directed verdict and entered an order of acquittal, dismissing the case. We hold that when a trial court grants a defendant's motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court's ruling does not constitute an acquittal for the purposes of double jeopardy and retrial is therefore not barred. Accordingly, because the trial court's actions did not constitute an acquittal for the purposes of double jeopardy, we affirm the judgment of the Court of Appeals and remand the case for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, Lamar Evans, was charged with burning other real property, MCL 750.73,[1] for starting a fire in a vacant house. At trial, two Detroit police officers testified that while on routine patrol on September 22, 2008, they observed a house on fire at 9608 Meyers Street and investigated. After hearing an explosion at the burning house, the officers observed defendant running away from the side of the house with a gasoline can. Officer Jermaine Owens got out of the patrol car and told defendant to stop. When defendant continued to run, Officer Owens chased defendant on foot. Defendant dropped the gasoline can during the chase, and Officer Owens caught defendant after he tripped

---

[1] MCL 750.73 provides:

> Any person who wilfully or maliciously burns any building or other real property, or the contents thereof, other than those specified in the next preceding section of this chapter, the property of himself or another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 10 years.

2

and fell.  Officer Cyril Davis, who had initially joined the chase on foot, returned to the patrol car and drove it to where Officer Owens had detained defendant.  The officers testified that defendant told them he had made a mistake and burned down the house.

An arson investigator from the Detroit Fire Department, Lieutenant Christopher Smith, determined that the burn patterns in the house indicated the use of ignitable liquid accelerants.  Further testing showed that gasoline had been poured in the kitchen, dining room, and a bedroom.  As a result, Smith concluded that the fire was arson.  No one was living in the house at the time of the fire, and the house lacked gas, electricity, and water service.  The homeowner testified that he was in the process of purchasing the house, which needed repairs, and that he and his family had begun moving their belongings into the house.

Upon the close of the prosecution's proofs, defense counsel moved for a directed verdict under MCR 6.419(A),[2] arguing that the prosecution had failed to prove that the burned building was not a dwelling house.  Defense counsel argued that the jury instructions indicated that a necessary element of the burning of other real property is that the building was *not* a dwelling, while the prosecution's evidence reflected only that it

---

[2] MCR 6.419(A) provides:

> After the prosecutor has rested the prosecution's case-in-chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant's motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction.  The court may not reserve decision on the defendant's motion.  If the defendant's motion is made after the defendant presents proofs, the court may reserve decision on the motion, submit the case to the jury, and decide the motion before or after the jury has completed its deliberations.

3

*was* a dwelling. The prosecutor argued that nothing in MCL 750.73 required proof that

the building was not a dwelling. The prosecutor also argued that it was unnecessary to

read the instructions for the element that the building was not a dwelling and that the jury

instructions are only a guide. The trial court then made the following ruling:

> *The Court*: The Court does not have an option of not reading all of the required elements in a jury instruction, and there are no optional elements in [CJI2d] 31.3. All of them are required. And the instructions are not a guide. They are what is required by law.[3]

> Looking at the commentary, it refers to a distinction between [CJI2d] 31.2 and 31.3. [CJI2d] 31.2 is the instruction that is required for burning [a] dwelling house.

> The commentary, speaking of CJI 2nd 31.1 [sic, 31.3], Burning Other Real Property, the commentary: "This offense is similar to the one described in CJI 2nd 31.2, except that an essential element is that the structure burned is not"—which is in italicized writing print—"a dwelling house." And then it cites People v Antonelli, A-n-t-o-n-e-l-l-i, 64 Mich App 620, 238 NW 2nd 363 [1975], and notes that it was reversed on other grounds, and gives the citation as 66 Mich App 138, 238 NW 2nd 551 (1975).

> And the commentary goes on to say: "As the Court explained on rehearing, common law arson required that the building be a dwelling. In creating the less serious crime of burning buildings other than dwellings,

---

[3] Contrary to the assertion of the trial court, the Michigan Criminal Jury Instructions are not binding on trial courts. These instructions are offered merely to assist a trial court in executing its duty to instruct on the law. See *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985). As we will discuss, the trial court ignored a use note in the instructions indicating that it was not appropriate to require proof that the building was not a dwelling unless instructing on the crime of burning other property as a lesser included offense of burning a building. Notwithstanding its failure to properly apply the use note, when there is the potential for inconsistency between a proposed instruction and the applicable law, the trial court had not only the right, but the obligation to reject or modify the instruction to bring it into conformity with the law.

4

the legislature simply eliminated the element of habitation. Other real property is all real property not included in MCL 750.72."

And the People in this case have relied on MCL 750.73, which specifically says it cannot be a dwelling.

[*Prosecutor*]: Judge, could I have a moment to go upstairs and pull the statute and make sure that the statute addressed that. Because my understanding of the law is that it doesn't matter whether it's a dwelling or not, it just has to be a structure. And that's the reason for the—

*The Court*: Other than a house, because the legislature has imposed a higher penalty for one burning a house.

[MCL] 750.73 reads: "Burning of Other Real Property – Any person who willfully or maliciously burns any building or other real property, or the contents thereof, other than those specified in the next preceding section of this chapter, the property of himself or another, shall be guilty of a felony . . . [.]" I won't give the term of punishment.

And it says: "Other than those specified in the next preceding." Isn't preceding before? The next preceding section of this chapter would be [MCL] 750.72. [MCL] 750.72 is entitled "Burning Dwelling House," and reads: "Any person who willfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof, whether owned by him or another, or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony." I will not read the term of punishment, but it is twice that which is specified in [MCL] 750.73.

So reading the language of [MCL] 750.73, which refers back to [MCL] 750.72, a dwelling house, either occupied or unoccupied, is excluded by law.

[*Prosecutor*]: Judge, may I have a moment to go upstairs and consult with my supervisors?

*The Court*: You can consult with them when you tell them I've granted the motion.

[*Defense Counsel*]: Thank you, Judge.

*The Court*: As a matter of law.

5

The testimony was this was a dwelling house, paid for for [sic] forty-some-odd thousand dollars. That the folks had moved some stuff into it, even though it doesn't matter.

Motion granted.

The prosecution appealed, and in an authored opinion, the Court of Appeals reversed the trial court's order granting defendant's motion for a directed verdict and remanded for further proceedings.[4] The panel stated that it was undisputed that the trial court had erred by concluding that the prosecution was required to prove that the burned building was not a dwelling to convict defendant of burning other real property.[5] The panel took note of this Court's statement in *People v Nix*, 453 Mich 619; 556 NW2d 866 (1996), that retrial is barred when the trial court grants a directed verdict of acquittal even when the trial court is "'wrong with respect to whether a particular factor is an element of the charged offense.'"[6] Nonetheless, the panel characterized that statement as dicta because "the majority in *Nix* . . . acknowledg[ed] that it was unclear whether the situation that concerned the dissent, that dismissal of the case was premised on the prosecution's failure to establish a nonelement of an offense, had even occurred."[7]

The panel then considered the dissenting opinion in *Nix*, finding it persuasive to support its holding that "an actual acquittal occurs, for double jeopardy purposes, 'only when the trial court's action, whatever its form, is a resolution in the defendant's favor,

---

[4] *People v Evans*, 288 Mich App 410, 411; 794 NW2d 848 (2010).

[5] *Id*. at 416-417.

[6] *Evans*, 288 Mich App at 418, quoting *Nix*, 453 Mich at 628.

[7] *Evans*, 288 Mich App at 419.

6

correct or not, of a factual element necessary for a criminal conviction.'"[8]  Applying this holding, the panel concluded that double-jeopardy principles did not bar retrial because the trial court had not resolved a factual element necessary to establish a conviction.[9] Rather, the trial court had based its directed verdict solely on the prosecution's failure to present any evidence establishing that the burned building was not a dwelling, which was not an element of the charged offense.[10]

Defendant applied for leave to appeal in this Court, and we granted leave to address "whether [defendant's] retrial is barred under the double jeopardy clauses of the state and federal constitutions where the trial court's grant of defendant's motion for a directed verdict was based on an error of law and did not determine any actual element of the charged offense."[11]

## II.  STANDARD OF REVIEW

Defendant's claim that the double-jeopardy provisions of the United States and Michigan Constitutions bar his retrial is reviewed de novo.[12]

---

[8] *Id*. at 421-422, quoting *Nix*, 453 Mich at 634-635 (BOYLE, J., dissenting).

[9] *Evans*, 288 Mich App at 423.

[10] *Id*.

[11] *People v Evans*, 488 Mich 924 (2010).

[12] *People v Szalma*, 487 Mich 708, 715; 790 NW2d 662 (2010).

7

III. ANALYSIS

The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense[13] in order "to prevent the state from making repeated attempts at convicting an individual for an alleged crime."[14] "[T]he double jeopardy prohibition 'is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.'"[15] In addition, this prohibition provides related protections against a second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense.[16] The protection against a second prosecution for the same offense after an acquittal is at issue here.[17] In

---

[13] US Const, Am V (protecting a criminal defendant from "be[ing] subject for the same offence to be twice put in jeopardy of life or limb"); Const 1963, art 1, § 15 ("No person shall be subject for the same offense to be twice put in jeopardy."). The Michigan Constitution's double-jeopardy provision is construed consistently with the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution. *Szalma*, 487 Mich at 716.

[14] *People v Torres*, 452 Mich 43, 63; 549 NW2d 540 (1996), citing *People v Dawson*, 431 Mich 234, 250; 427 NW2d 886 (1988).

[15] *Szalma*, 487 Mich at 717, quoting *Ball v United States*, 163 US 662, 669; 16 S Ct 1192; 41 L Ed 300 (1896); see also *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977) (characterizing this statement as "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence").

[16] *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004).

[17] In *Torres*, 452 Mich at 64, and *Dawson*, 431 Mich at 251, this Court quoted the oft cited rationale behind double-jeopardy protections from *Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957), which stated:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense,

8

considering whether retrying defendant would violate this protection, we must examine whether the trial court's ruling constituted an acquittal for the purposes of double jeopardy.

The United States Supreme Court set forth the standard for what constitutes an acquittal for the purposes of double jeopardy in *United States v Martin Linen Supply Co* 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977). The Court considered the effect of a verdict of acquittal entered pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure once the jury had been discharged after being unable to reach a verdict.[18] It held that "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action."[19] Rather, an acquittal for the purposes of double jeopardy is defined as a "ruling of the judge, whatever its label, [that] actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[20] Applying this definition, the Court concluded that the trial court's ruling constituted an acquittal for the purposes

---

thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

[18] *Martin Linen*, 430 US at 565-567. The standard for granting a motion for acquittal is set forth in the subrule governing acquittal motions made before a case is submitted to a jury, FR Crim P 29(a), which authorized a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."

[19] *Martin Linen*, 430 US at 571.

[20] *Id*.

of double jeopardy because the trial court had evaluated all of the prosecution's evidence and determined that it was insufficient to sustain a conviction.[21]

Further, an acquittal, defined in *Martin Linen* as a resolution of the elements of the charged offense, "remains a bar to retrial even if it is 'based upon an egregiously erroneous foundation.'"[22] Consistently with the idea that an acquittal can occur in some circumstances when the trial court errs, the United States Supreme Court has determined "that an acquittal is final even if it is based on an erroneous evidentiary ruling that precluded the prosecution from introducing evidence that would have been sufficient to convict the defendant."[23]

As noted in *People v Szalma*, the United States Supreme Court has not directly considered the related question at issue here regarding whether a trial court's acquittal on a criminal charge based on insufficient evidence bars retrial if the trial court erroneously added an extraneous element to the charge.[24] In reaching the conclusion that the United States Supreme Court has not directly addressed this issue, we believe that *Szalma* persuasively distinguished the relevant decisions from that Court: *Arizona v Rumsey*, 467

---

[21] The Court pointed out that "[i]n entering the judgments of acquittal, the [trial] court also recorded its view that 'the Government has failed to prove the material allegations beyond a reasonable doubt' and that 'defendant should be found not guilty.'" *Id*. at 572 (citation and quotation marks omitted).

[22] *Szalma*, 487 Mich at 717, quoting *Fong Foo v United States*, 369 US 141, 143; 82 S Ct 671; 7 L Ed 2d 629 (1962).

[23] *Szalma*, 487 Mich at 717-718, citing *Sanabria v United States*, 437 US 54, 68-69; 98 S Ct 2170; 57 L Ed 2d 43 (1978) (emphasis omitted).

[24] *Szalma*, 487 Mich at 718.

10

US 203; 104 S Ct 2305; 81 L Ed 2d 164 (1984), *Smalis v Pennsylvania*, 476 US 140; 106 S Ct 1745; 90 L Ed 2d 116 (1986), and *Smith v Massachusetts*, 543 US 462; 125 S Ct 1129; 160 L Ed 2d 914 (2005).[25]

In *Rumsey*, the trial court considered whether there was evidence of the statutory aggravating factors that permit a jury to decide whether the death penalty is warranted. The aggravating factor at issue was whether a murder occurred "'as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.'"[26] As *Szalma* explained, the trial court had "erroneously ruled that this aggravating circumstance only involved murders for hire, rather than *any* murder occurring during the course of a robbery, as the Arizona Supreme Court had interpreted the statute."[27] The United States Supreme Court concluded "that the trial court's decision operated as a verdict on whether defendant was eligible for the death penalty, and that therefore, defendant could not subsequently be placed in jeopardy of death for the same offense, notwithstanding the trial court's 'misconstruction of the statute defining the pecuniary gain aggravating circumstance.'"[28]

*Szalma* also addressed *Smalis*, in which the United States Supreme Court considered "whether a trial court's granting of a 'demurrer' within the commonwealth of Pennsylvania's rules of criminal procedure involved an acquittal for double jeopardy

---

[25] *Id*. at 718 n 21.

[26] *Id*. at 205, quoting Ariz Rev Stat Ann 13-703(F)(5).

[27] *Szalma*, 487 Mich at 719 n 21.

[28] *Id*., quoting *Rumsey*, 467 US at 211.

11

purposes."[29]  The Pennsylvania Supreme Court had held that it was not, reasoning that in deciding whether to grant a demurrer, the trial court was not required to determine a defendant's guilt, but only "whether the evidence, if credited by the jury, [was] legally sufficient to warrant the conclusion that the defendant is guilty beyond a reasonable doubt."[30]  The United States Supreme Court reversed, holding that such a ruling constituted an acquittal for double-jeopardy purposes despite "an alleged error that the trial court committed in interpreting the 'recklessness' element of Pennsylvania's third-degree murder statute."[31]

In *Smith*, the trial court granted an acquittal on a firearm charge on the basis of its determination that there was no evidence for the element included in the statute governing unlawful possession of a firearm that the barrel length of the gun possessed was less than 16 inches.[32]  After trial continued on the remaining charges, the trial court reversed its ruling when the prosecutor identified precedent under which the victim's testimony about the kind of gun sufficed to establish that the barrel was shorter than 16 inches.[33]  Despite the trial court's initial error regarding what evidence could prove the barrel-length element, the United States Supreme Court held that this initial ruling "meets the definition of acquittal that our double-jeopardy cases have consistently used: It

---

[29] *Szalma*, 487 Mich at 719 n 21, citing *Smalis*, 476 US 140.

[30] *Smalis*, 476 US at 143 (citation omitted).

[31] *Szalma*, 487 Mich at 719 n 21, citing *Smalis*, 476 US at 144 n 7.

[32] *Smith*, 543 US at 464-465.

[33] *Id*. at 465.

'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'"[34]

Reviewing *Rumsey*, *Smalis*, and *Smith*, we agree with the reasoning in *Szalma* that each of these cases involves evidentiary errors regarding the proof needed to establish a factual element of the respective crimes at issue.[35] Specifically, in *Rumsey*, the trial court's error concerned "not *whether* a particular aggravating circumstance [i.e., element] existed to allow a jury to impose a death penalty for first-degree murder, but *how the prosecutor must prove the occurrence of that circumstance in a particular case*."[36] Similarly, in *Smalis*, the trial court's alleged error concerned *how* to prove the recklessness element, not *whether* the recklessness element existed.[37] Additionally, in *Smith*, the trial court's error regarded "not *whether* a particular element to the crime" of unlawful possession of a firearm "existed, but rather *what evidence could prove that element*."[38]

Following *Martin Linen*, these decisions establish that when a trial court makes an error regarding the sufficiency of the evidence to satisfy a factual element or elements of the charged offense, that resolution nonetheless constitutes an acquittal for the purposes of double jeopardy. As we discuss, the principles behind the prohibition against double

---

[34] *Id.* at 468, quoting *Martin Linen*, 430 US at 571.

[35] *Szalma*, 487 Mich at 718 n 21.

[36] *Id.* at 719 n 21.

[37] See *id.*

[38] *Id.* at 718 n 21.

13

jeopardy and the definition of acquittal set forth in *Martin Linen* support the proposition that a constitutionally meaningful difference exists between this case, in which the trial court identified an extraneous element and dismissed the case solely on that basis, and *Rumsey*, *Smalis*, and *Smith*, in which the trial courts made evidentiary errors regarding how to prove the governing law. Accordingly, these decisions do not implicate the case at hand because the trial court's error here resulted in a dismissal without a resolution regarding the sufficiency of the factual elements of the charged offense.[39]

Although the United States Supreme Court has not directly considered the question presented here, this Court has dealt with this issue before in *Nix* and *Szalma*.[40] *Nix* considered, for the purposes of double jeopardy, the effect of the trial court's ruling that the defendant "could not be convicted of either [first-degree premeditated murder or first-degree felony-murder] as a matter of law" because the defendant "'owed no legal duty to the victim . . . .'"[41] In responding to the dissent, *Nix* stated:

---

[39] We admit that, as in this case, the "acquittals" in *Rumsey*, *Smalis*, and *Smith* were based on the prosecution's failure to prove something that the law did not actually require it to prove. Acknowledging this similarity does not change the analysis, however, because the key distinction between those cases and the instant appeal remains: the trial courts in *Rumsey*, *Smalis*, and *Smith* resolved one of the factual elements of the crime charged, while the trial court in this case added an element and then found it unsupported by evidence in the record.

[40] See *Szalma*, 487 Mich at 718.

[41] *Nix*, 453 Mich at 622. The victim in *Nix* died after the defendant's boyfriend kidnapped the victim and locked her in her own trunk. *Id*. at 621. Specifically, "[t]he victim died six days later of dehydration and methanol poisoning, before which time, the prosecution alleged, the defendant was told of the victim's screams coming from the trunk." *Szalma*, 487 Mich at 720 n 23, citing *Nix*, 453 Mich at 630.

14

The dissent appears to read the *Martin Linen* standard as if the phrase "correct or not" refers to the factual truth of the prosecution's evidence, a determination completely outside the trial court's purview in a jury trial when considering a defendant's motion for directed verdict. When ruling on a motion for directed verdict, a trial court must, as this trial court did, view the prosecution's evidence in the light most favorable to the prosecution. Accordingly, the trial court cannot make an erroneous factual resolution. The phrase "correct or not" refers to all aspects of the trial court's ultimate legal decision, including even cases where the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense. As discussed below, however, it is not clear that this situation even exists in the case at bar.[42]

These statements do not control the outcome here because they are nonbinding obiter dicta.[43] The quotation from *Nix* explicitly stated that it was "not clear that this situation"—i.e., one in which "the trial court [was] factually wrong with respect to whether a particular factor is an element of the charged offense"—had even occurred."[44] Rather, *Nix* reflected the conclusion that the trial court had not erred on its view of what made up the essential elements.[45] Consequently, the quoted observations regarding the

---

[42] *Nix*, 453 Mich at 628.

[43] "Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011) (citation and quotation marks omitted).

[44] *Nix*, 453 Mich at 628.

[45] *Id*. at 631. Specifically, the majority asserted that "the dissent's focus on the fact that 'duty' is not a specifically enumerated element of kidnapping is not significant and, under the actual facts presented here, a distinction without a difference." *Id*. In the majority's view, the prosecution's case was entirely predicated on the theory that the defendant, after allegedly learning that the victim was in the trunk, "became complicit in the criminal endeavor when she failed to act to free or otherwise aid the victim." *Id*. This theory necessarily included the idea that the defendant "had a duty to act in some way[.]" *Id*. Thus, the majority took the view that the trial court had not erred in its view

15

definition of acquittal were unnecessary to determine the outcome in *Nix* and do not compel a result in this case.

Further, *Szalma* does not compel treating the pertinent statements in *Nix* as controlling. *Szalma* discussed *Nix* when considering whether a trial court's erroneous legal analysis regarding the sufficiency of the evidence to support a conviction of first-degree criminal sexual conduct constituted an acquittal for the purposes of double jeopardy.[46] Specifically, the trial court in *Szalma* granted the defendant's motion for a directed verdict after erroneously ruling that the fact-finder had to conclude that the defendant committed the assault for a sexual purpose.[47]

We pointed out in *Szalma* that *Nix* barred a retrial of the defendant because, under *Nix*, "an acquittal retains its finality for double jeopardy purposes even when 'the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense.'"[48] We refused to address the prosecution's argument regarding whether *Nix* was correctly decided because the prosecutor at trial had conceded the underlying erroneous statement of the elements.[49] As a result, we reversed the Court of Appeals' judgment and reinstated the trial court's directed verdict of acquittal.[50]

regarding the defendant's duty because proving the defendant's duty was necessary to show the *actus reus*, which is an essential element of every crime.

[46] See *Szalma*, 487 Mich at 709-710, 720, 722, 725-726.

[47] *Id*. at 722-723.

[48] *Id*. at 726, quoting *Nix*, 453 Mich at 628.

[49] *Szalma*, 487 Mich at 725.

[50] *Id*. at 727.

*Szalma* does not control the instant case because, here, the prosecutor did not concede the underlying legal error at trial. Rather, the prosecutor argued that the charged offense did not include the element that the building was not a dwelling. Accordingly, the prosecution's argument is properly before us. In addition, because we refused in *Szalma* to permit the prosecutor to harbor error at trial and then use that error as an appellate parachute, we could not properly reach the application of *Nix*. In fully considering *Nix* now, we will not ignore the *Nix* majority's conclusion that it was not clear that the situation bringing about its double-jeopardy discussion had even occurred.

In making its ruling in the instant case, the trial court acted under MCR 6.419(A),[51] granting defendant's motion for a directed verdict because the prosecution had failed to provide evidence that the burned house was not a dwelling. The trial court undisputedly misapprehended CJI2d 31.3[52] in its legally erroneous analysis that added an

---

[51] Pursuant to MCR 6.419(A), after the close of the prosecution's case-in-chief, the court "may . . . direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction."

[52] CJI2d 31.3, Burning Other Real Property, provided before its amendment in September 2009:

> (1) [The defendant is charged with the crime of / You may also consider the lesser charge of] burning a building or any of its contents. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> (2) First, that the defendant burned *[describe property alleged]*. The term "burn" in this case means setting fire to or doing anything that results in the starting of a fire, or helping or persuading someone else to set a fire. If any part of the *[describe property]* is burned, [no matter how small,] that is all that is necessary to count as a burning; the property does not have to be completely destroyed. [The *(describe property)* is not burned if it is

17

extraneous element to the charged offense.[53]   The trial court's confusion apparently

stemmed from its reliance on a jury instruction read when the crime of burning other real

property is charged as a lesser included offense of the crime of burning a dwelling.[54]   The

merely blackened by smoke, but it is burned if it is charred so that any part of it is destroyed.]

(3) Second, that the property that was burned was a building or any of its contents.  [It does not matter whether the defendant owned or used the building.]

(4) Third, that when the defendant burned the building or its contents, [he / she] intended to burn the building or contents or intentionally committed an act that created a very high risk of burning the building or contents and that, while committing the act, the defendant knew of that risk and disregarded it.

[(5) Fourth, that the building was not a dwelling house.  A dwelling house is a structure that is actually being lived in or that could reasonably be presumed to be capable of being lived in at the time of the fire.  (A business that is located very close to and used in connection with a dwelling may be considered to be a dwelling.)]

A use note indicated that ¶ (5) "should be used when instructing on the crime as a lesser included offense of burning a building."  An amendment to the instruction in September 2009 removed ¶ (5) and the use note.

[53] The elements of burning of other real property, MCL 750.73, are "(1) the burning of any building or other real property, or the contents thereof, and (2) that the fire was willfully or maliciously set."  *People v Greenwood*, 87 Mich App 509, 514 n 1; 274 NW2d 832 (1978).

[54] MCL 750.72, which prohibits the burning of a dwelling, provides:

Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof, whether owned by himself or another, or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years.

panel in *People v Antonelli* (*On Rehearing*) rightly stated, however, that "[t]he necessary elements to prove either offense are the same, except to prove the greater it must be shown that the building is a dwelling; to prove the lesser it is not necessary to prove that the building is not a dwelling."[55] Thus, the trial court wrongly determined that showing that the burned building was not a dwelling is an element of burning other real property.

We agree with the Court of Appeals that defendant's retrial is not barred because the trial court's ruling dismissing the case did not constitute an acquittal for the purposes of double jeopardy. "[T]he trial court's characterization of its ruling is not dispositive, and what constitutes an 'acquittal' is not controlled by the form of the action."[56] Consequently, the trial court's actions pursuant to MCR 6.419(A) and its entry of an order of acquittal do not control. Although these actions take the form of an acquittal, we are concerned with the substance of the trial court's ruling.

Again, an acquittal for double-jeopardy purposes is a "ruling of the judge, whatever its label, [that] actually represents a resolution, correct or not, of some or all of the *factual elements* of the offense charged."[57] The trial court's legal error resulted in its adding an element to the charged offense and requiring the prosecution to provide proof of that extraneous element. As the Court of Appeals concluded, the trial court did not resolve or even address any factual element necessary to establish a conviction for burning other real property. Rather, the substance of the trial court's ruling was entirely

---

[55] *People v Antonelli (On Rehearing)*, 66 Mich App 138, 140; 238 NW2d 551 (1975).

[56] *People v Mehall*, 454 Mich 1, 5; 557 NW2d 110 (1997).

[57] *Martin Linen*, 430 US at 571 (emphasis added).

19

focused on the extraneous element. Consequently, the trial court's decision was based on an error of law unrelated to defendant's guilt or innocence on the elements of the charged offense, and thus the trial court's dismissal of the charge did not constitute an acquittal.[58]

*Nix* misconstrued the definition of acquittal in *Martin Linen*, stating that "on a motion for directed verdict, a trial court must, as this trial court did, view the prosecution's evidence in the light most favorable to the prosecution. Accordingly, the trial court cannot make an erroneous factual resolution."[59] As the prosecution argues, however, a trial court certainly can make an erroneous factual resolution in ruling on a motion for a directed verdict. The trial court can do so, for instance, when it forgets about evidence or does not realize that certain evidence can satisfy a factual element. This is what took place in *Smith v Massachusetts*, discussed earlier, when the trial court failed to realize that testimony that the defendant appeared to have a .32 or .38 caliber revolver was sufficient to establish that the factual element that the barrel of the gun was shorter than 16 inches.[60] This incorrect resolution of a factual element in *Smith* constituted an acquittal for the purposes of double jeopardy.

From this faulty presumption that a trial court cannot make an erroneous factual resolution, *Nix* wrongly observed that the phrase "correct or not" from *Martin Linen*'s definition of acquittal "refers to all aspects of the trial court's ultimate legal decision,

---

[58] Accord *United States v Maker*, 751 F2d 614, 622 (CA 3, 1984) (holding that a judicial ruling is an acquittal "only when, in terminating the proceeding, the trial court actually resolves in favor of the defendant a factual element necessary for a criminal conviction").

[59] *Nix*, 453 Mich at 628.

[60] *Smith*, 543 US at 465.

20

including even cases where the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense."[61]  A court cannot, however, be factually wrong regarding what makes up the elements of the crime because an erroneous determination of what constitutes the elements of an offense is a legal error, not a factual one.[62]

Instead, the definition of acquittal in *Martin Linen* and the phrase "correct or not" means that it is of no consequence for the purposes of double jeopardy whether the trial court's resolution of the *factual elements* is correct.  Nonetheless, this resolution must be based on at least some of the factual elements of the charged crime.  By adding an extraneous element—that the prosecution needed to prove that the burned building was not a dwelling—the trial court's legal error did not involve a resolution of any of the factual elements of the charged offense, and thus its ruling does not fall within the definition of acquittal for the purposes of double jeopardy.

We further conclude that the distinction we have drawn from the relevant United States Supreme Court decisions is reasonable and constitutionally grounded.  Rather than uniformly determine that any instance in which a trial court enters an order of acquittal definitively bars retrial, the United States Supreme Court has opted to consistently apply

---

[61] *Nix*, 453 Mich at 628.

[62] See *United States v Boyle*, 469 US 241, 249 n 8; 105 S Ct 687, 83 L Ed 2d 622 (1985) ("Whether the elements that constitute "reasonable cause" are *present* in a given situation is a question of fact, but what elements *must* be present to constitute "reasonable cause" is a question of law."); *People v Holtschlag*, 471 Mich 1, 4; 684 NW2d 730 (2004) ("Determining the elements of common-law involuntary manslaughter is a question of law.").

21

the definition of acquittal from *Martin Linen*.[63] By doing so the Court has determined that the labels the trial court used are not controlling and that a resolution must be on the factual elements to constitute an acquittal. But the line, once crossed, triggers double-jeopardy protections regardless of the correctness of the trial court's decision.[64]

We believe that the application of the definition of acquittal reflects a balancing of the public's interest in having one full and fair opportunity to prosecute a criminal case[65] and the interest in protecting a criminal defendant from being subjected "to

---

[63] See *Smith*, 543 US at 467-468.

[64] We recognize that the United States Supreme Court has stated that "'[t]he fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles . . . affects the accuracy of that determination but it does not alter its essential character,'" *Smalis*, 476 US at 144 n 7, quoting *United States v Scott*, 437 US 82, 98; 98 S Ct 2187; 57 L Ed 2d 65 (1978), and that "any contention that the Double Jeopardy Clause must itself . . . leave open a way of correcting legal errors is at odds with the well-established rule that the bar will attach to a preverdict acquittal that is patently wrong in law," *Smith*, 543 US at 473. But we disagree with Justice CAVANAGH that our position "diminishes" or "minimizes" these statements because they have no effect on our distinction between an evidentiary error regarding the proof necessary to establish a factual element and the effect of a legal error in which an extraneous element is added to the charged offense. *Post* at 1, 7. Furthermore, these statements are not inconsistent with our view of the case at hand because they are necessarily made within the framework of the definition of acquittal established in *Martin Linen* and the United States Supreme Court has not cast doubt on the viability of that definition. Additionally, it is clear that this case does not involve an erroneous evidentiary ruling or an erroneous interpretation of governing legal principles. The trial court, rather than rightly or wrongly interpreting the governing legal principles, opted to invent a governing principle, terminating the trial on a ground unrelated to defendant's factual guilt or innocence. The statement from *Smith* is similarly inapplicable because it was made after the Court had already concluded that an acquittal had occurred. We do not assert that the Double Jeopardy Clause is the avenue for correcting the trial court's error. Instead, because an "acquittal" did not occur, the prohibition against double jeopardy is not implicated.

[65] See *Scott*, 437 US at 100.

22

embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[66]   When considering the application of this definition and the weighing of these interests, it is reasonable to treat differently cases in which the resolution was based on the prosecution's failure to prove something that the law, properly understood, did not require it to prove.   Doing so depends on whether the trial court actually considered the factual elements of the charged offense.   A resolution of the factual elements, even if erroneous, crosses the established bright line.   But a court's adding an extraneous element and resolving the case solely on the basis of that added element prevents any evaluation of the charged crime on the merits and thus completely thwarts society's interest in allowing the prosecution one full and fair opportunity to present its case.[67]

---

[66] *Green*, 355 US at 187-188.

[67] See *Maker*, 751 F2d at 624, which stated:

> Our conclusion that an appeal is not barred in this case is consistent with the policies underlying the double jeopardy clause.   This is not a case in which a second trial is permitted "for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."  *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978).   Instead, this is a case in which the district court, as the result of a legal error, determined that the government could not prove a fact that is not necessary to support a conviction.   To preclude an appeal in this case would deprive the public "of its valued right to 'one complete opportunity to convict those who have violated its laws.'"  *Scott*, 437 U.S. at 100, 98 S.Ct. at 2198 (quoting *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1975)).

Therefore, barring retrial is inappropriate in a case such as this. Because of the trial court's legal error, no factual elements of the charged offense were considered, and as a result the people have not been afforded the opportunity to have their case reviewed for the sufficiency of the evidence on the factual elements even once. Permitting retrial to allow such an opportunity hardly depicts "an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact."[68] Rather, because the trial court's actions fell outside the definition of acquittal, permitting defendant's retrial does not frustrate the prohibition against double jeopardy.

## IV. CONCLUSION

We hold that when a trial court grants a defendant's motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court's ruling does not constitute an acquittal for the purposes of double jeopardy and retrial is therefore not barred. Accordingly, because the trial court's actions here did not constitute an acquittal for the purposes of double jeopardy, we affirm the judgment of the Court of Appeals and remand the case for further proceedings not inconsistent with this opinion.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly

---

[68] *Scott*, 437 US at 96; see also *id*. at 98-99 (holding that that retrial is permitted when the defendant elects to terminate the trial on a procedural basis unrelated to the defendant's factual guilt or innocence).

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                     No. 141381

LAMAR EVANS,

        Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

The issue presented in this case was decided more than a decade ago in *People v Nix*, 453 Mich 619; 556 NW2d 866 (1996). In that case, this Court held that an acquittal for purposes of the Double Jeopardy Clauses of the Michigan and United States Constitutions occurs when a trial court evaluates the government's evidence and determines that it is legally insufficient to sustain a conviction, regardless of whether the acquittal was based on an "'egregiously erroneous foundation,'" *id*. at 630-631 (citation omitted), and including those cases in which the trial court was incorrect regarding whether a particular factor is actually an element of the charged offense, *id*. at 628. Although *Nix* was based on an application of United States Supreme Court precedent and precedent from this Court, today the majority effectively overrules *Nix* and, in doing so, diminishes the United States Supreme Court's directive that "*any contention* that the Double Jeopardy Clause must itself . . . leave open a way of correcting legal errors is at odds with the well-established rule that the bar will attach" even "to a preverdict acquittal

that is patently wrong in law." *Smith v Massachusetts*, 543 US 462, 473; 125 S Ct 1129; 160 L Ed 2d 914 (2005) (emphasis added). Because *Nix* is harmonious with established United States Supreme Court precedent, I respectfully dissent from the majority's decision to summarily disregard *Nix*.

## I. DOUBLE-JEOPARDY JURISPRUDENCE

It is axiomatic that under both the state and federal constitutions, a defendant may not be twice put in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. The underlying focus of the Double Jeopardy Clause is on a defendant's exposure to the personal strain, embarrassment, and expense of a criminal trial more than once for the same offense. See *United States v Scott*, 437 US 82, 87; 98 S Ct 2187; 57 L Ed 2d 65 (1978), citing *Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957); *Smalis v Pennsylvania*, 476 US 140, 143 n 4; 106 S Ct 1745; 90 L Ed 2d 116 (1986). Accordingly, the guarantee against double jeopardy "'protects against a second prosecution for the same offense after acquittal.'" *United States v DiFrancesco*, 449 US 117, 129; 101 S Ct 426; 66 L Ed 2d 328 (1980) (citation omitted). Notably, the United States Supreme Court has explained that "'the most fundamental rule in the history of double jeopardy jurisprudence'" is that an acquittal "'may not be reviewed,'" on error or otherwise, "'without putting the defendant twice in jeopardy . . . .'" *Sanabria v United States*, 437 US 54, 64; 98 S Ct 2170; 57 L Ed 2d 43 (1978), quoting *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977) (citation and quotation marks omitted). Consistent with this notion, an acquittal is "absolute," *People v Anderson*, 409 Mich 474, 483; 295 NW2d 482 (1980), regardless of whether the acquittal is "based on a jury verdict of not guilty or on a ruling by the [trial] court that the

2

evidence is insufficient to convict . . . ." *Scott*, 437 US at 91.[1]  The threshold question in these types of cases, then, is whether a trial court's ruling on a defendant's motion for a directed verdict was, in fact, an acquittal.  *Smith*, 543 US at 467.

To determine whether an acquittal actually occurred for purposes of a double-jeopardy analysis, a reviewing court must "determine whether the ruling of the judge, whatever its label, actually represents a resolution, *correct or not*, of some or all of the factual elements of the offense charged."  *Martin Linen*, 430 US at 571 (emphasis added). As the United States Supreme Court has explained, "what matters is that . . . the [trial] judge 'evaluated the . . . evidence and determined that it was legally insufficient to sustain a conviction.'"  *Smith*, 543 US at 469, quoting *Martin Linen*, 430 US at 572. Accordingly, an order entering a finding that the evidence was insufficient to sustain a conviction "meets the definition of acquittal that [the] double-jeopardy cases have

---

[1] The United States Supreme Court has further elaborated that it has "long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal *to the same extent* it prohibits reexamination of an acquittal by jury verdict," regardless of whether the judge's ruling of acquittal comes in a bench trial or a jury trial. *Smith*, 543 US at 467 (emphasis added). The Court also explained that there is a "single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury": the prosecution can appeal to reinstate a jury's verdict of guilty after a "trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal . . . ." *Id*. That exception, however, is not applicable in this case. See, also, *DiFrancesco*, 449 US at 130 (stating that the Court "necessarily afford[s] absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision") (citation and quotation marks omitted); *Sanabria*, 437 US at 64 n 18 (stating that "[i]t is without constitutional significance that the court entered a judgment of acquittal rather than directing the jury to bring in a verdict of acquittal or giving it erroneous instructions that resulted in an acquittal"); cf. *People v Ellis*, 468 Mich 25; 658 NW2d 142 (2003).

consistently used . . . ." *Smith*, 543 US at 468; see, also, *Anderson*, 409 Mich at 486; *Nix*, 453 Mich at 625-627; 630-631.

Notably, the United States Supreme Court has stated that the "fundamental nature" of the rule barring review of a verdict of acquittal is "manifested by its *explicit extension*" to situations in which an acquittal was based on an incorrect foundation. *Sanabria*, 437 US at 64 (emphasis added). On the basis of this extension, when a defendant is acquitted because of a determination that the evidence was insufficient to support a conviction, "there is no exception permitting retrial," *id.* at 75, "even if the legal rulings underlying the acquittal were erroneous," *id.* at 64, and "no matter how 'egregiously erroneous'. . . the legal rulings leading to that judgment might be," *id*. at 75, quoting *Fong Foo v United States*, 369 US 141, 143; 82 S Ct 671; 7 L Ed 2d 629 (1962); see, also, *Arizona v Rumsey*, 467 US 203, 211; 104 S Ct 2305; 81 L Ed 2d 164 (1984) (explaining that United States Supreme Court precedent establishes that an "acquittal on the merits bars retrial even if based on legal error"). Thus, "[t]he status of the trial court's judgment as an acquittal is not affected" by a trial court's legal error in interpreting governing legal principles: "'[T]he fact that the acquittal may result from erroneous evidentiary rulings *or* erroneous interpretations of governing legal principles . . . affects the accuracy of that determination but it does not alter its essential character.'" *Smalis*, 476 US at 144 n 7 (emphasis added; citation and quotation marks omitted), quoting *Scott*, 437 US at 98, and citing *Sanabria*, 437 US 54, and *Rumsey*, 467 US 203.

In summary, the United States Supreme Court has repeatedly stated that a trial court's "ruling that as a matter of law the State's evidence is insufficient to establish [the defendant's] factual guilt" is a "'resolution, correct or not, of some or all of the factual

4

elements of the offense charged'" and, therefore, constitutes an acquittal for purposes of the Double Jeopardy Clause. *Smalis*, 476 US at 144 & n 6. Further, that an acquittal was founded on an erroneous legal ruling is irrelevant: the trial court's judgment of acquittal based on a finding of insufficient evidence, however erroneous, bars retrial. See *id.* at 145 n 7; *Rumsey*, 467 US at 211. Although I welcome the majority's decision to embrace policy considerations for the purpose of this appeal, as the United States Supreme Court has explained, "[w]hat may seem superficially to be a disparity in the rules governing a defendant's liability to be tried again is explainable by reference to the underlying purposes of the Double Jeopardy Clause." *Scott*, 437 US at 91. Specifically, the rule barring retrial after an acquittal is "justified on the ground that, *however mistaken the acquittal may have been*, there would be an unacceptably high risk that the Government, with it superior resources, would wear down a defendant, thereby 'enhancing the possibility that even though innocent he may be found guilty.'" *DiFrancesco*, 449 US at 130 (emphasis added), quoting *Green*, 355 US at 188.

## II. *NIX* IS HARMONIOUS WITH ESTABLISHED PRECEDENT

As the foregoing summary illustrates, the principles articulated in *Nix* are both founded on and harmonious with longstanding United States Supreme Court caselaw. See *Nix*, 453 Mich at 624-632; see, also, *People v Szalma*, 487 Mich 708, 727-729; 790 NW2d 662 (2010) (CAVANAGH, J., concurring). Thus, *Nix* was not, as the majority asserts, based on faulty presumptions or misconstrions of United States Supreme Court precedent. Indeed, contrary to the majority's position, it bears repeating that the United States Supreme Court "has never held that a trial court's preverdict acquittal on the merits may be reversed because of a legal error." *Szalma*, 487 Mich at 728 n 1

5

(CAVANAGH, J., concurring). Instead, as I have noted, the Court has repeatedly stated the opposite, without crafting the distinction that the majority creates today. In fact, the United States Supreme Court recently reaffirmed the principle that the Double Jeopardy Clause does not provide an exception for legal errors, even if the preverdict acquittal was "patently wrong in law." *Smith*, 543 US at 473.

Accordingly, as explained in *Nix*, it is irrelevant for purposes of the Double Jeopardy Clause that an acquittal was founded on an erroneous interpretation of a governing legal principle. *Nix*, 453 Mich at 626-628, 630-631; see, also, *Smalis*, 476 US at 144 n 7. This is so regardless of whether the erroneous interpretation of the governing legal principle is based on an error in interpreting a statutory requirement or, as in this case, an error in determining the actual elements necessary to commit an offense. *Szalma*, 487 Mich at 728 n 2 (CAVANAGH, J., concurring), citing *Rumsey*, 467 US at 211.

Further, it elevates form over substance to make such a distinction, as the majority does today. In my view, *Rumsey* illustrates this point. In that case, a trial court misconstrued a statute defining an aggravating circumstance used for determining whether the death penalty was appropriate. Specifically, the trial court erroneously agreed with the defendant that the statute required the prosecution to prove beyond a reasonable doubt that the murder was a "contract-type" killing, rather than a murder committed during the course of a theft. *Rumsey*, 467 US at 205-207. Because the trial judge found that this aggravating circumstance was not present, the defendant's life was spared. *Id.* at 206. Despite the trial court's error in interpreting the statute, the United States Supreme Court affirmed the Arizona Supreme Court's ruling that the defendant "had effectively been 'acquitted' of death at his initial sentencing," *id.* at 208, holding

6

that, although the trial court had relied on a misconstruction of the statute defining the aggravating circumstance, that error of law was of no avail to the prosecution for purposes of the Double Jeopardy Clause. *Id.* at 211.[2] Although *Rumsey* addressed the proper interpretation of the statute's requirements, as even the majority here concedes, the trial court in *Rumsey* required the prosecution to prove something that it was not otherwise required to prove: that the murder was a contract-type killing.

In my view, creating a distinction between improperly adding an element to an offense and misconstruing an actual element of a statute to require the prosecution to prove something extraneous—both situations in which the trial court, because of a legal error, technically determined that the government could not prove a fact that was not necessary to support a conviction—elevates form over substance. In addition, the majority's distinction minimizes the United States Supreme Court's general directive that the Double Jeopardy Clause does not provide an exception for legal errors, even if the acquittal is "patently wrong in law," *Smith*, 543 US at 473, and "no matter how

---

[2] As I have stated before, the error in *Rumsey* was clearly related to the proper interpretation of the statute's requirements, rather than a mere evidentiary error as the majority purports. *Szalma*, 487 Mich at 728 n 2 (CAVANAGH, J., concurring). See, also, *Smalis*, 476 US at 145 n 8 (explaining that *Rumsey* involved "an erroneous construction of the [governing] law"). Further, it bears repeating that "the majority's discussion of whether the errors in certain cases should be characterized as evidentiary errors is irrelevant because . . . the United States Supreme Court has repeatedly stated" that the Double Jeopardy Clause precludes retrial when there has been an acquittal on the merits "regardless of *either* evidentiary errors *or* erroneous interpretations of governing legal principles." *Szalma*, 487 Mich at 728 n 2 (CAVANAGH, J., concurring).

7

'egregiously erroneous' . . . the legal rulings leading to that judgment might be," *Sanabria*, 437 US at 75 (citations omitted).[3]

Therefore, I disagree with the majority's conclusion that an error in interpreting a statutory requirement should be treated differently from an error in interpreting the elements necessary for an offense: both errors constitute an erroneous interpretation of a governing legal principle, and both errors may involve a situation in which the trial court's decision was "based upon the prosecution's failure to prove something that the

---

[3] In light of the United States Supreme Court's broad assertion that "*any contention* that the Double Jeopardy Clause must itself . . . leave open a way of correcting legal errors is at odds with the well-established rule that *the bar will attach to a preverdict acquittal that is patently wrong in law*," *Smith*, 543 US at 473 (emphasis added), I disagree with the majority's assertion that the Court's statement in *Smith* does not apply in this case. See, also, *Sanabria*, 437 US at 64 (stating that the "fundamental nature" of the rule barring review of a verdict of acquittal is "manifested by its *explicit extension to situations where an acquittal is 'based upon an egregiously erroneous foundation'*") (emphasis added), quoting *Fong Foo*, 369 US at 143. Accordingly, the United States Supreme Court has clearly and emphatically stated that the bar to retrial attaches even when the acquittal itself is legally wrong or based on an incorrect foundation, notwithstanding the majority's assertions to the contrary in this case. See *ante* at 22 n 64 (stating that *Smith* does not apply because the Court had already concluded that an acquittal had occurred and asserting that this case does not involve an erroneous interpretation of a governing legal principle because the trial court opted to "invent a governing principle"); see, also, *Smith*, 543 US at 467-468 (stating that an order entering a finding that the evidence was insufficient to sustain a conviction "meets the definition of acquittal that [the] double-jeopardy cases have consistently used: It 'actually represents a resolution, *correct or not*, of some or all of the factual elements of the offense charged.'"), quoting *Martin Linen*, 430 US at 571 (emphasis added); *Smalis*, 476 US at 144 (stating that a "ruling that as a matter of law the State's evidence is insufficient to establish [a defendant's] factual guilt" is an acquittal under the Double Jeopardy Clause); *Anderson*, 409 Mich at 486 (same).

8

law, properly understood, did not require it to prove." *Ante* at 20; see, also, *ante* at 21 n 53.[4]

## III. *NIX* IS CONTROLLING PRECEDENT

Except for the composition of this Court, little has changed since the aforementioned principles were articulated in *Nix* well over a decade ago. Yet today the majority effectively overrules *Nix* without persuasively explaining why *Nix* and the United States Supreme Court decisions on which *Nix* was based should no longer control.[5] It is therefore clear that the current majority's rationale is simply based on its unstated, yet apparent, preference for the approach advanced by the *Nix* dissent and

---

[4] The *Nix* Court is not the only court to hold that it makes no difference for double-jeopardy purposes whether the trial court ruled that there was insufficient evidence related to a required element of the offense or whether there was insufficient evidence related to an erroneously added element. See *Carter v State (On Remand)*, 365 Ark 224, 228-229; 227 SW3d 895 (2006) (holding that, under *Smith*, regardless of a trial court's legal error, the trial court's determination that there was a lack of evidence on the charged offense resulted in an acquittal for double jeopardy purposes and, in so holding, rejecting the state's argument that *Smith* was "distinguishable" because, "unlike in *Smith*, where the trial judge ruled that proof of a *required* element of the charged offense was lacking," in *Carter* "the State was required to prove an *additional* element that the statute [did] not require").

[5] This is not the first time that this Court has been asked to reconsider *Nix*. See, e.g., *People v Limmer*, 461 Mich 974 (2000); *People v Robinson*, 470 Mich 874 (2004) (granting leave to appeal to consider whether *Nix* was "properly decided"), vacated 473 Mich 878 (2005). Thus, this Court has had the opportunity to review the aforementioned precedents on at least two other occasions, yet decided not to overrule *Nix*. I would continue this practice of adhering to *Nix* because, as noted, *Nix* is consistent with United States Supreme Court precedent.

9

*United States v Maker*, 751 F2d 614 (CA 3, 1984)—approaches that the *Nix* majority properly rejected as unpersuasive.[6]

Further, I disagree with the majority's implicit conclusion that *Nix*, when viewed in its totality, does not control the outcome of this case. Rather, notwithstanding the majority's apparent conclusion to the contrary, *Nix* addressed the situation presented in this case when it stated that a trial court's determination that the evidence is insufficient to sustain a conviction constitutes an acquittal for double-jeopardy purposes and "precludes appellate inquiry into [the ruling's] legal correctness," *Nix*, 453 Mich at 627, regardless of "whether 'the acquittal was based upon an egregiously erroneous foundation' . . . or not," *id*. at 631 (citation omitted); see, also, *id.* at 624-627; *Anderson*, 409 Mich at 483, 486. Thus, in my view, the majority errs by failing to consider *Nix* in its totality and, in selectively quoting *Nix*, conveniently turns a blind eye to the doctrine of stare decisis.

Even assuming arguendo that the majority is correct in classifying selected portions of *Nix* as dicta, the majority's sudden decision to classify those portions of *Nix* as such stands in stark contrast to the majority's treatment of *Nix* as "controlling" precedent and "compelling reversal" just two terms ago in a case that considered the exact issue raised in this appeal. Specifically, in *Szalma*, the majority explained that "this Court's decision in *Nix* provides that a trial court's erroneously added element of a crime

---

[6] Although it is apparent that the majority's opinion is influenced by *Maker*, the majority fails to explain why *Maker* should now govern despite *Nix*'s rejection of it more than a decade ago. Notably, it does not appear that *Maker* even addressed United States Supreme Court precedent, such as *Sanabria*, regarding the effect of legal errors leading to a judgment of acquittal.

does not negate the finality of its directed verdict," *Szalma*, 487 Mich at 725, because a trial court's "acquittal on the merits of the charged offense is final under the holding of *Nix*;" *id*. at 722; see, also, *id.* at 726 (stating that "[t]his Court held in . . . *Nix* that an acquittal retains its finality . . . even when 'the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense'" and the "Court of Appeals erred by ruling otherwise"), quoting *Nix*, 453 Mich at 628; *Szalma*, 487 Mich at 727 (stating that the "trial court's decision . . . , though premised on an erroneous understanding of the legal elements of the charged offense, nonetheless constituted . . . a decision on the sufficiency of the evidence under *Nix*"). In so stating, the *Szalma* majority accurately explained that "*Nix* holds that such legal error precludes retrial," *id*. at 710, that "*Nix* squarely compels a reversal," *id*., and that "this Court's decision in *Nix* clearly controls the outcome of this case," *id.* at 720 n 21. In light of the *Szalma* majority's treatment of *Nix* as controlling precedent, I find the majority's newfound conclusion that *Nix* is not binding precedent, and its attempts to distinguish *Szalma*'s treatment of *Nix* as such, both contradictory and disingenuous.

## IV. CONCLUSION

The new standard that the majority opinion adopts today effectively overrules *Nix* without a persuasive explanation of why *Nix* and the United States Supreme Court precedent on which it was founded should no longer control. In obfuscating these precedents and creating distinctions that simply do not appear to exist, the majority dismisses the fact that whether a trial court erred in its interpretation of the elements of the crime is irrelevant: the essential character of an acquittal is not altered, even if the acquittal results from "erroneous interpretations of governing legal principles . . . ."

11

*Smalis*, 476 US at 144 n 7 (citations and quotation marks omitted). Because the United States Supreme Court has rejected "*any contention* that the Double Jeopardy Clause must itself . . . leave open a way of correcting legal errors," *Smith*, 543 US at 473 (emphasis added), I dissent from the majority's decision to summarily disregard *Nix* and the controlling precedent on which *Nix* is based. Accordingly, I would reverse the judgment of the Court of Appeals.

<div style="margin-left:50%">
Michael F. Cavanagh<br>
Marilyn Kelly
</div>

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                         No. 141381

LAMAR EVANS,

      Defendant-Appellant.

_____

HATHAWAY, J. (*dissenting*).

      I dissent from the majority's decision because I disagree with the distinction that the majority draws between a trial court's erroneous ruling related to a required element of an offense and a trial court's erroneous ruling related to a mistakenly added element of an offense. The United States Supreme Court has explained that, for purposes of double jeopardy, a reviewing court must "determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[1] Further, I believe that *People v Nix*, 453 Mich 619; 556 NW2d 866 (1996), controls this case. Accordingly, I would reverse the judgment of the Court of Appeals.

                                       Diane M. Hathaway

---

[1] *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977).