(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## EVANS *v.* MICHIGAN

### CERTIORARI TO THE SUPREME COURT OF MICHIGAN

No. 11–1327. Argued November 6, 2012—Decided February 20, 2013

After the State of Michigan rested its case at petitioner Evans' arson trial, the court granted Evans' motion for a directed verdict of acquittal, concluding that the State had failed to prove that the burned building was not a dwelling, a fact the court mistakenly believed was an "element" of the statutory offense. The State Court of Appeals reversed and remanded for retrial. In affirming, the State Supreme Court held that a directed verdict based on an error of law that did not resolve a factual element of the charged offense was not an acquittal for double jeopardy purposes.

*Held*: The Double Jeopardy Clause bars retrial for Evans' offense. Pp. 4−17.

   (a) Retrial following a court-decreed acquittal is barred, even if the acquittal is "based upon an egregiously erroneous foundation," *Fong Foo* v. *United States*, 369 U. S. 141, 143, such as an erroneous decision to exclude evidence, *Sanabria* v. *United States*, 437 U. S. 54, 68−69; a mistaken understanding of what evidence would suffice to sustain a conviction, *Smith* v. *Massachusetts*, 543 U. S. 462, 473; or a "misconstruction of the statute" defining the requirements to convict, *Arizona* v. *Rumsey*, 467 U. S. 303, 211. Most relevant here, an acquittal encompasses any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense. See, *e.g.*, *United States* v. *Scott*, 437 U. S. 82, 98; *Burks* v. *United States*, 437 U. S. 1, 10. In contrast to procedural rulings, which lead to dismissals or mistrials on a basis unrelated to factual guilt or innocence, acquittals are substantive rulings that conclude proceedings absolutely, and thus raise significant double jeopardy concerns. *Scott,* 437 U. S., at 91. Here, the trial court clearly "evaluated the [State's] evidence and determined that it was legally insufficient to sustain a conviction." *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 572. Evans'

acquittal was the product of an erroneous interpretation of governing legal principles, but that error affects only the accuracy of the determination to acquit, not its essential character. See *Scott,* 437 U. S., at 98. Pp. 4−6.

(b) The State Supreme Court attempted to distinguish this Court's cases on the ground that they involved "the sufficiency of the factual elements of the charged offense," while Evans' case concerned "an error of law unrelated to [his] guilt or innocence," but this Court perceives no such difference. This case, like the Court's previous ones, involves an antecedent legal error that led to an acquittal because the State failed to prove a fact it was not actually required to prove. The State and the United States claim that only when an actual element of the offense is resolved can there be an acquittal of the offense, but Evans' verdict was based on something that was concededly not an element. Their argument reads *Martin Linen* too narrowly and is inconsistent with this Court's decisions since then. *Martin Linen* focused on the significance of the District Court's acquittal based on a nonculpability determination, and its result did not depend on defining the "elements" of the offense. Culpability is the touchstone, not whether any particular elements were resolved or whether the nonculpability determination was legally correct. *Scott*, 437 U. S., at 98. Pp. 7−11.

(c) Additional arguments the State and the United States raise in support of the lower court's distinction are unpersuasive. The State claims that unless an actual element of the offense is resolved by the trial court, the only way to know whether the court's ruling was an "acquittal" is to rely upon the court's label, which would wrongly allow the form of the trial court's action to control. However, the instant decision turns not on the form of the trial court's action but on whether that action serves substantive or procedural purposes. The State and the United States argue that if the grounds for an acquittal are untethered from the actual elements of the offense, a trial court could issue an unreviewable order finding insufficient evidence to convict for any reason at all. But this Court presumes that courts exercise their duties in good faith. The State also suggests that Evans should not be heard to complain when a trial-court error that he induced is corrected and the State wishes to retry him, but most midtrial acquittals result from defense motions. The United States claims that, under *Lee* v. *United States*, 432 U. S. 23, Evans was required to ask the court to resolve whether nondwelling status was an element of the offense before jeopardy attached. However, *Lee* involved a midtrial dismissal that was akin to a mistrial, while this case involves a ruling on the sufficiency of the State's proof. Pp. 11−14.

Syllabus

(d) This Court declines to revisit decisions such as *Fong Foo*, *Smith*, *Rumsey*, and *Smalis* v. *Pennsylvania,* 476 U. S. 140.  There is no reason to believe that the existing rules have become so "unworkable" as to justify overruling precedent.  *Payne* v. *Tennessee*, 501 U. S. 808, 827.  And the logic of those cases still holds.  As for the objection that the rule denies the prosecution a full and fair opportunity to present its evidence to the jury while the defendant reaps a "windfall" from the trial court's unreviewable error, sovereigns have power to prevent such situations by disallowing the practice of midtrial acquittals, encouraging courts to defer consideration of a motion to acquit until after the jury renders a verdict, or providing for mandatory continuances or expedited interlocutory appeals.  Pp. 14−16.

491 Mich. 1, 810 N. W. 2d 535, reversed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, GINSBURG, BREYER, and KAGAN, JJ., joined.  ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–1327

## LAMAR EVANS, PETITIONER *v.* MICHIGAN

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF MICHIGAN

[February 20, 2013]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

When the State of Michigan rested its case at petitioner Lamar Evans' arson trial, the court entered a directed verdict of acquittal, based upon its view that the State had not provided sufficient evidence of a particular element of the offense.  It turns out that the unproven "element" was not actually a required element at all.  We must decide whether an erroneous acquittal such as this nevertheless constitutes an acquittal for double jeopardy purposes, which would mean that Evans could not be retried.  This Court has previously held that a judicial acquittal premised upon a "misconstruction" of a criminal statute is an "acquittal on the merits . . . [that] bars retrial." *Arizona* v. *Rumsey*, 467 U. S. 203, 211 (1984).  Seeing no meaningful constitutional distinction between a trial court's "misconstruction" of a statute and its erroneous addition of a statutory element, we hold that a midtrial acquittal in these circumstances is an acquittal for double jeopardy purposes as well.

I

The State charged Evans with burning "other real property," a violation of Mich. Comp. Laws §750.73 (1981).

The State's evidence at trial suggested that Evans had burned down an unoccupied house.  At the close of the State's case, however, Evans moved for a directed verdict of acquittal.  He pointed the court to the applicable Michigan Criminal Jury Instructions, which listed as the "Fourth" element of the offense "that the building was not a dwelling house."  3 Mich. Crim. Jury Instr. §31.3, p. 31–7 (2d ed., Supp. 2006/2007).  And the commentary to the Instructions emphasized, "an essential element is that the structure burned is *not* a dwelling house."  *Id.,* at 31–8.  Evans argued that Mich. Comp. Laws §750.72 criminalizes common-law arson, which requires that the structure burned be a dwelling, while the provision under which he was charged, §750.73, covers all other real property.[1]  Persuaded, the trial court granted the motion.  491 Mich. 1, 8, 810 N. W. 2d 535, 539 (2012).  The court explained that the "'testimony [of the homeowner] was this was a dwelling house,'" so the nondwelling requirement of §750.73 was not met.  *Ibid.*

On the State's appeal, the Michigan Court of Appeals reversed and remanded.  288 Mich. App. 410, 794 N. W. 2d 848 (2010).  Evans had conceded, and the court held, that under controlling precedent, burning "other real property" is a lesser included offense under Michigan law, and dis-

--------

[1] Mich. Comp. Laws §750.72 (1981), "Burning dwelling house," provides: "Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof, whether owned by himself or another, or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years."

And §750.73, "Burning of other real property," provides: "Any person who wilfully or maliciously burns any building or other real property, or the contents thereof, other than those specified in the next preceding section of this chapter, the property of himself or another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 10 years."

proving the greater offense is not required. *Id.*, at 416, 794 N. W. 2d, at 852 (citing *People* v. *Antonelli*, 66 Mich. App. 138, 140, 238 N. W. 2d 551, 552 (1975) (on rehearing)).[2] The court thus explained it was "undisputed that the trial court misperceived the elements of the offense with which [Evans] was charged and erred by directing a verdict." 288 Mich. App., at 416, 794 N. W. 2d, at 852. But the court rejected Evans' argument that the Double Jeopardy Clause barred retrial. *Id.*, at 421–422, 794 N. W. 2d, at 856.

In a divided decision, the Supreme Court of Michigan affirmed. It held that "when a trial court grants a defendant's motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court's ruling does not constitute an acquittal for the purposes of double jeopardy and retrial is therefore not barred." 491 Mich., at 4, 810 N. W. 2d, at 536–537.

We granted certiorari to resolve the disagreement among state and federal courts on the question whether retrial is barred when a trial court grants an acquittal because the prosecution had failed to prove an "element" of the offense that, in actuality, it did not have to prove.[3] 567 U. S. \_\_\_ (2012). We now reverse.

———————

[2] In other words, the pattern jury instructions were incorrect. The State later revised them. See 288 Mich. App. 410, 416, n. 3, 794 N. W. 2d 848, 852, n. 3 (2010).

[3] Compare 491 Mich. 1, 810 N. W. 2d 535 (2012) (case below), and *State* v. *Korsen*, 138 Idaho 706, 716–717, 69 P. 3d 126, 136–137 (2003) (same conclusion), and *United States* v. *Maker*, 751 F. 2d 614, 624 (CA3 1984) (same), with *Carter* v. *State*, 365 Ark. 224, 228, 227 S. W. 3d 895, 898 (2006) (rejecting this distinction), and *State* v. *Lynch*, 79 N. J. 327, 337–343, 399 A. 2d 629, 634–637 (1979) (holding double jeopardy barred retrial after trial court erroneously required extra element).

## II

## A

In answering this question, we do not write on a clean slate. Quite the opposite. It has been half a century since we first recognized that the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is "based upon an egregiously erroneous foundation." *Fong Foo* v. *United States*, 369 U. S. 141, 143 (1962) (*per curiam*). A mistaken acquittal is an acquittal nonetheless, and we have long held that "[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." *United States* v. *Ball*, 163 U. S. 662, 671 (1896).

Our cases have applied *Fong Foo*'s principle broadly. An acquittal is unreviewable whether a judge directs a jury to return a verdict of acquittal, *e.g., Fong Foo*, 369 U. S., at 143, or forgoes that formality by entering a judgment of acquittal herself. See *Smith* v. *Massachusetts*, 543 U. S. 462, 467–468 (2005) (collecting cases). And an acquittal precludes retrial even if it is premised upon an erroneous decision to exclude evidence, *Sanabria* v. *United States*, 437 U. S. 54, 68–69, 78 (1978); a mistaken understanding of what evidence would suffice to sustain a conviction, *Smith*, 543 U. S., at 473; or a "misconstruction of the statute" defining the requirements to convict, *Rumsey*, 467 U. S., at 203, 211; cf. *Smalis* v. *Pennsylvania*, 476 U. S. 140, 144–145, n. 7 (1986). In all these circumstances, "the fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character." *United States* v. *Scott*, 437 U. S. 82, 98 (1978) (internal quotation marks and citation omitted).

Most relevant here, our cases have defined an acquittal to encompass any ruling that the prosecution's proof is

insufficient to establish criminal liability for an offense. See *ibid.,* and n. 11; *Burks* v. *United States*, 437 U. S. 1, 10 (1978); *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977). Thus an "acquittal" includes "a ruling by the court that the evidence is insufficient to convict," a "factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability," and any other "rulin[g] which relate[s] to the ultimate question of guilt or innocence." *Scott,* 437 U. S., at 91, 98, and n. 11 (internal quotation marks omitted). These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials. Procedural dismissals include rulings on questions that "are unrelated to factual guilt or innocence," but "which serve other purposes," including "a legal judgment that a defendant, although criminally culpable, may not be punished" because of some problem like an error with the indictment. *Id.,* at 98, and n. 11.

Both procedural dismissals and substantive rulings result in an early end to trial, but we explained in *Scott* that the double jeopardy consequences of each differ. "[T]he law attaches particular significance to an acquittal," so a merits-related ruling concludes proceedings absolutely. *Id.,* at 91. This is because "[t]o permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty,'" *ibid.* (quoting *Green* v. *United States*, 355 U. S. 184, 188 (1957)). And retrial following an acquittal would upset a defendant's expectation of repose, for it would subject him to additional "embarrassment, expense and ordeal" while "compelling him to live in a continuing state of anxiety and insecurity." *Id.,* at 187. In contrast, a "termination of the proceedings

against [a defendant] on a basis unrelated to factual guilt
or innocence of the offense of which he is accused," 437
U. S*., at 98–99, *i.e.,* some procedural ground, does not pose
the same concerns, because no expectation of finality
attaches to a properly granted mistrial.

Here, "it is plain that the [trial court] . . . evaluated
the [State's] evidence and determined that it was legally
insufficient to sustain a conviction." *Martin Linen*, 430
U. S., at 572. The trial court granted Evans' motion under
a rule that requires the court to "direct a verdict of acquit-
tal on any charged offense as to which the evidence is
insufficient to support conviction." Mich. Rule Crim. Proc.
6.419(A) (2012). And the court's oral ruling leaves no
doubt that it made its determination on the basis of "'[t]he
testimony'" that the State had presented. 491 Mich., at 8,
810 N. W. 2d, at 539. This ruling was not a dismissal on
a procedural ground "unrelated to factual guilt or inno-
cence," like the question of "preindictment delay" in *Scott*,
but rather a determination that the State had failed to
prove its case. 437 U. S., at 98, 99. Under our precedents,
then, Evans was acquitted.

There is no question the trial court's ruling was wrong;
it was predicated upon a clear misunderstanding of what
facts the State needed to prove under State law. But that
is of no moment. *Martin Linen*, *Sanabria*, *Rumsey*,
*Smalis*, and *Smith* all instruct that an acquittal due to
insufficient evidence precludes retrial, whether the court's
evaluation of the evidence was "correct or not," *Martin
Linen*, 430 U. S., at 571, and regardless of whether the
court's decision flowed from an incorrect antecedent ruling
of law. Here Evans' acquittal was the product of an "erro-
neous interpretatio[n] of governing legal principles," but
as in our other cases, that error affects only "the accuracy
of [the] determination" to acquit, not "its essential charac-
ter." *Scott*, 437 U. S., at 98 (internal quotation marks
omitted).

## B

The court below saw things differently. It identified a "constitutionally meaningful difference" between this case and our previous decisions. Those cases, the court found, "involve[d] evidentiary errors regarding the proof needed to establish a factual element of the . . . crimes at issue," but still ultimately involved "a resolution regarding the sufficiency of the factual elements of the charged offense." 491 Mich., at 14–15, 810 N. W. 2d, at 542–543. When a court mistakenly "identifie[s] an extraneous element and dismisse[s] the case solely on that basis," however, it has "not resolve[d] or even address[ed] any factual element necessary to establish" the offense. *Id.*, at 15, 20, 810 N. W. 2d, at 543, 546. As a result, the court below reasoned, the case terminates "based on an error of law unrelated to [the] defendant's guilt or innocence on the elements of the charged offense," and thus falls outside the definition of an acquittal. *Id.*, at 21, 810 N. W. 2d, at 546.

We fail to perceive the difference. This case, like our previous ones, involves an antecedent legal error that led to an acquittal because the State failed to prove some fact it was not actually required to prove. Consider *Rumsey*. There the trial court, sitting as sentencer in a capital case involving a murder committed during a robbery, mistakenly held that Arizona's statutory aggravating factor describing killings for pecuniary gain was limited to murders for hire. Accordingly, it found the State had failed to prove the killing was for pecuniary gain and sentenced the defendant to life imprisonment. After the State successfully appealed and obtained a death sentence on remand, we held that retrial on the penalty phase question was a double jeopardy violation.[4]

_____

[4] Under *Bullington* v. *Missouri*, 451 U. S. 430 (1981), a capital defendant is "acquitted" of the death penalty if, at the end of a separate sentencing proceeding, the factfinder concludes that the prosecution

The only relevant difference between that situation and this one is that in *Rumsey* the trial court's error was called a "misinterpretation" and a "misconstruction of the statute," 467 U. S., at 207, 211, whereas here the error has been designated the "erroneous addition of [an] extraneous element to the charged offense." 491 Mich., at 3–4, 810 N. W. 2d, at 536. But we have emphasized that labels do not control our analysis in this context; rather, the substance of a court's decision does. See *Smalis*, 476 U. S., at 144, n. 5; *Scott*, 437 U. S., at 96–97; *Martin Linen*, 430 U. S., at 571. The error in *Rumsey* could just as easily have been characterized as the erroneous addition of an element of the statutory aggravating circumstance: that the homicide be a murder-for-hire. Conversely, the error here could be viewed as a misinterpretation of the statute's phrase "building or other real property" to exclude dwellings.[5] This is far too fine a distinction to be meaning-

_____

has failed to prove required additional facts to support a sentence of death. Thus in *Rumsey*, the trial court's initial "judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty." 467 U. S., at 211.

[5] Indeed, it is possible that this is what the trial court thought it was doing, not articulating an additional element. The statute criminalizes burning "any building or other real property, . . . other than those specified in" the previous section, which criminalizes the burning of a dwelling house. Mich. Comp. Laws §750.73. In light of the statute's phrasing, the trial court interpreted "building or other real property" to be exclusive of the type of property described in §750.72, although the Michigan courts have explained that the term is actually meant to be inclusive. So the trial court decision could be viewed as having given the statutory "building" element an unduly narrow construction (by limiting it to nondwellings), just as the trial court in *Rumsey* gave the pecuniary-gain provision an unduly narrow construction (by limiting it to contract killings). Nevertheless, we accept the parties' and the Michigan courts' alternative characterization of the trial court's error as the "addition" of an extraneous element. Our observation simply underscores how malleable the distinction adopted by the Michigan Supreme Court, and defended by the State and the United States, can

ful, and we reject the notion that a defendant's constitutional rights would turn on the happenstance of how an appellate court chooses to describe a trial court's error.

Echoing the Michigan Supreme Court, the State and the United States, as well as the dissent, emphasize *Martin Linen*'s description of an acquittal as the "resolution, correct or not, of some or all of the factual *elements* of the *offense* charged." 430 U. S., at 571 (emphasis added); see Brief for Respondent 11–17; see Brief for United States as *Amicus Curiae* 11–15 (hereinafter U. S. Brief); see *post,* at 6–8. They observe that the Double Jeopardy Clause protects against being twice placed in jeopardy for the same "offence," U. S. Const., Amdt. 5, cl. 2, and they note that an offense comprises constituent parts called elements, which are facts that must be proved to sustain a conviction. See, *e.g., United States* v. *Dixon*, 509 U. S. 688, 696–697 (1993). Consequently, they argue, only if an actual element of the offense is resolved can it be said that there has been an acquittal of the offense, because "'innocence of the charged offense' cannot turn on something that is concededly not an element of the offense." U. S. Brief 15. Because Evans' trial ended without resolution of even one actual element, they conclude, there was no acquittal.

This argument reads *Martin Linen* too narrowly, and it is inconsistent with our decisions since then. Our focus in *Martin Linen* was on the significance of a judicial acquittal under Fed. Rule Crim. Proc. 29. The District Court in that case had "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." 430 U. S., at 572. That determination of nonculpability was enough to make the acquittal akin to a jury verdict; our holding did not depend upon defining the

––––––––––

be. And it belies the dissent's suggestion, *post,* at 11 (opinion of ALITO, J.), that drawing this distinction is "quite easy" here, and that the basis for the trial court's ruling could not be subject to "real dispute."

"elements" of the offense. As we have explained, *supra,*
at 5–6, *Scott* confirms that the relevant distinction is
between judicial determinations that go to "the criminal
defendant's lack of criminal culpability," and those that
hold "that a defendant, although criminally culpable, may
not be punished because of a supposed" procedural error.
437 U. S., at 98. Culpability (*i.e.,* the "ultimate question of
guilt or innocence") is the touchstone, not whether any
particular elements were resolved or whether the deter-
mination of nonculpability was legally correct. *Id.,* at 98,
n. 11 (internal quotation marks omitted).

Perhaps most inconsistent with the State's and United
States' argument is *Burks*. There we held that when a
defendant raises insanity as a defense, and a court decides
the "Government ha[s] failed to come forward with suffi-
cient proof of [the defendant's] capacity to be responsible
for criminal acts," the defendant has been acquitted be-
cause the court decided that "criminal culpability ha[s] not
been established." 437 U. S., at 10. Lack of insanity was
not an "element" of Burks' offense, bank robbery by use of
a dangerous weapon. See 18 U. S. C. §2113(d) (1976 ed.).
Rather, insanity was an affirmative defense to criminal
liability. Our conclusion thus depended upon equating a
judicial acquittal with an order finding insufficient evi-
dence of culpability, not insufficient evidence of any par-
ticular element of the offense.[6]

_____

[6] To account for *Burks*, the United States posits that, "[a]s used in
[its] brief, the 'elements' of an offense encompass legally recognized
defenses that would negate culpability." U. S. Brief 11, n. 3. So too
would the dissent hold that, "as used in this opinion, the 'elements' of
an offense include legally recognized affirmative defenses that would
negate culpability." *Post,* at 8, n. 2. Rather than adopt a novel defini-
tion of the word "element" to mean "elements and affirmative defenses,"
and then promptly limit that novel definition to these circumstances,
we prefer to read *Burks* for what it says, which is that the issue is
whether the bottom-line question of "criminal culpability" was resolved.
437 U. S., at 10.

In the end, this case follows those that have come before it. The trial court's judgment of acquittal resolved the question of Evans' guilt or innocence as a matter of the sufficiency of the evidence, not on unrelated procedural grounds. That judgment, "however erroneous" it was, precludes reprosecution on this charge, and so should have barred the State's appeal as well. *Sanabria*, 437 U. S., at 69.

## III

### A

The State, supported by the United States, offers three other reasons why the distinction drawn by the court below should be maintained. None persuades us.

To start, the State argues that unless an actual element of the offense is resolved by the trial court, the only way to know whether the court's ruling was an "acquittal" is to rely upon the label used by the court, which would wrongly allow the form of the trial court's action to control. Brief for Respondent 17–18, 21–22. We disagree. Our decision turns not on the form of the trial court's action, but rather whether it "serve[s]" substantive "purposes" or procedural ones. *Scott*, 437 U. S., at 98, n. 11. If a trial court were to announce, midtrial, "The defendant shall be acquitted because he was prejudiced by preindictment delay," the Double Jeopardy Clause would pose no barrier to reprosecution, notwithstanding the "acquittal" label. Cf. *Scott*, 437 U. S. 82. Here we know the trial court acquitted Evans, not because it incanted the word "acquit" (which it did not), but because it acted on its view that the prosecution had failed to prove its case.

Next, the State and the United States fear that if the grounds for an acquittal are untethered from the actual elements of the offense, a trial court could issue an unreviewable order finding insufficient evidence to convict for any reason at all, such as that the prosecution failed to

prove "that the structure burned [was] blue."   Brief for
Respondent 16–17; U. S. Brief 15.   If the concern is that
there is no limit to the magnitude of the error that could
yield an acquittal, the response is that we have long held
as much.   See *supra,* at 4.   If the concern is instead that
our holding will make it easier for courts to insulate from
review acquittals that are granted as a form of nullifi-
cation, see Brief for Respondent 30, n. 58, we reject the
premise.   We presume here, as in other contexts, that
courts exercise their duties in good faith.   Cf. *Harrington*
v. *Richter*, 562 U. S. ___, ___ (2011) (slip op., at 13).

   Finally, the State suggests that because Evans induced
the trial court's error, he should not be heard to complain
when that error is corrected and the State wishes to retry
him.   Brief for Respondent 32–33; cf. *id.,* at 5–9.   But we
have recognized that "most [judgments of acquittal] re-
sult from defense motions," so "[t]o hold that a defendant
waives his double jeopardy protection whenever a trial
court error in his favor on a midtrial motion leads to an
acquittal would undercut the adversary assumption on
which our system of criminal justice rests, and would
vitiate one of the fundamental rights established by the
Fifth Amendment."   *Sanabria*, 437 U. S., at 78 (citation
omitted).[7]   It is true that when a defendant persuades the
court to declare a mistrial, jeopardy continues and retrial
is generally allowed.   See *United States* v. *Dinitz*, 424 U. S.
600 (1976).   But in such circumstances the defendant
consents to a disposition that contemplates reprosecution,
whereas when a defendant moves for acquittal he does
not.   See *Sanabria*, 437 U. S., at 75.

———————

   [7] The dissent says that "defense counsel fooled the judge," *post,* at 6,
but surely that charge is not fair.   Nothing suggests counsel exceeded
the permissible bounds of zealous advocacy on behalf of his client.
Counsel presented a colorable legal argument, and marshaled persua-
sive authority: Michigan's own criminal jury instructions, which, at the
time, supported his position.   See *supra,* at 2, 3, n. 2.

The United States makes a related argument. It contends that Evans could have asked the court to resolve whether nondwelling status is an element of the offense before jeopardy attached, so having elected to wait until trial was underway to raise the point, he cannot now claim a double jeopardy violation. U. S. Brief 22–25. The Government relies upon *Lee* v. *United States*, 432 U. S. 23 (1977), in which the District Court dismissed an indictment midtrial because it had failed to allege the required intent element of the offense. We held that retrial on a corrected indictment was not barred, because the dismissal was akin to a mistrial, not an acquittal. This was clear because the District Court had separately denied the defendant's motion for judgment of acquittal, explaining that the defendant "'has been proven [guilty] beyond any reasonable doubt in the world,'" while acknowledging that the error in the indictment required dismissal. *Id.,* at 26–27. Because the defendant "invited the court to interrupt the proceedings before formalizing a finding on the merits" by raising the indictment issue so late, we held the principles governing a defendant's consent to mistrial should apply. *Id.,* at 28 (citing *Dinitz*, 424 U. S. 600).

The Government suggests the situation here is "functionally similar," because "identifying the elements of an offense is a necessary step in determining the sufficiency of a charging document." U. S. Brief 23. But we cannot ignore the fact that what the trial court actually did here was rule on the sufficiency of the State's proof, not the sufficiency of the information filed against him. *Lee* demonstrates that the two need not rise or fall together. And even if the Government is correct that Evans could have challenged the charging document on the same legal theory he used to challenge the sufficiency of the evidence, it matters that he made only the latter motion, a motion that necessarily may not be made until trial is underway. Evans cannot be penalized for requesting from the court a

ruling on the merits of the State's case, as the Michigan Rules entitled him to do; whether he could have also brought a distinct procedural objection earlier on is beside the point.

B

In the alternative, the State and the United States ask us to reconsider our past decisions. Brief for Respondent 34–56 (suggesting overruling our cases since at least *Fong Foo*); U. S. Brief 27–32 (suggesting overruling *Smith*, *Rumsey*, and *Smalis*).[8] We declined to revisit our cases when the United States made a similar request in *Smalis*. 476 U. S., at 144; see Brief for United States as *Amicus Curiae* in *Smalis* v. *Pennsylvania*, O. T. 1985, No. 85–227, pp. 19–25. And we decline to do so here.

First, we have no reason to believe the existing rules have become so "unworkable" as to justify overruling precedent. *Payne* v. *Tennessee*, 501 U. S. 808, 827 (1991). The distinction drawn in *Scott* has stood the test of time, and we expect courts will continue to have little "difficulty in distinguishing between those rulings which relate to the ultimate question of guilt or innocence and those which serve other purposes." 437 U. S., at 98, n. 11 (internal quotation marks omitted). See, *e.g., United States* v. *Dionisio*, 503 F. 3d 78, 83–88 (CA2 2007) (collecting cases); 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §25.3(a), p. 629 (3d ed. 2007) (same).

Second, the logic of these cases still holds. There is no

_____

[8] The dissent's true gripe may be with these cases as well, rather than our result here, which, we have explained, follows inevitably from them. See *post,* at 5 (noting "how far [our cases] have departed from the common-law principles that applied at the time of the founding"); compare *post,* at 12 ("Permitting retrial in these egregious cases is especially appropriate"), with *Fong Foo* v. *United States*, 369 U. S. 141, 143 (1962) (*per curiam*) (according finality to even those acquittals "based upon an egregiously erroneous foundation").

question that a jury verdict of acquittal precludes retrial, and thus bars appeal of any legal error that may have led to that acquittal. See *Ball*, 163 U. S., at 671. So, had the trial court here instructed the jury that it must find the burned structure was not a dwelling in order to convict, the jury would have acquitted Evans accordingly; "'[a] jury is presumed to follow its instructions.'" *Blueford* v. *Arkansas*, 566 U. S. ___, ___ (2012) (slip op., at 6) (quoting *Weeks* v. *Angelone*, 528 U. S. 225, 234 (2000)). And that would have been the end of the matter. From that premise, *Fong Foo*'s holding follows: If a trial court instead exercises its discretion to direct a jury to return a verdict of acquittal, jeopardy also terminates notwithstanding any legal error, because there too it is the jury that returns an acquittal. And from there, *Martin Linen*'s conclusion is unavoidable: It should make no difference whether the court employs the formality of directing the jury to return an acquittal or whether the court enters an acquittal itself. *Sanabria*, *Rumsey*, *Smalis*, and *Smith* merely apply *Fong Foo* and *Martin Linen* in tandem: If a trial court makes an antecedent legal error (as in *Fong Foo*), and then grants a judgment of acquittal rather than directing the jury to acquit (as in *Martin Linen*), the result is an acquittal all the same.

In other words, there is no way for antecedent legal errors to be reviewable in the context of judicial acquittals unless those errors are also reviewable when they give rise to jury acquittals (contrary to the settled understanding that a jury verdict of acquittal is unreviewable), or unless we distinguish between juries that acquit pursuant to their instructions and judicial acquittals (notwithstanding that this is a purely formal distinction). Neither option has become more attractive with time. We therefore reiterate: "any contention that the Double Jeopardy Clause must itself . . . leave open a way of correcting legal errors is at odds with the well-established rule that the

bar will attach to a preverdict acquittal that is patently wrong in law." *Smith*, 543 U. S., at 473.

Finally, the State and the United States object that this rule denies the prosecution a full and fair opportunity to present its evidence to the jury, while the defendant reaps a "windfall" from the trial court's unreviewable error. Brief for Respondent 6; U. S. Brief 31–32. But sovereigns are hardly powerless to prevent this sort of situation, as we observed in *Smith*, 543 U. S., at 474. Nothing obligates a jurisdiction to afford its trial courts the power to grant a midtrial acquittal, and at least two States disallow the practice. See Nev. Rev. Stat. §175.381(1) (2011); *State* v. *Parfait*, 96, 1814 (La. App. 1 Cir. 05/09/97), 693 So. 2d 1232, 1242. Many jurisdictions, including the federal system, allow or encourage their courts to defer consideration of a motion to acquit until after the jury returns a verdict, which mitigates double jeopardy concerns.[9] See Fed. Rule Crim. Proc. 29(b). And for cases such as this, in which a trial court's interpretation of the relevant criminal statute is likely to prove dispositive, we see no reason why jurisdictions could not provide for mandatory continuances or expedited interlocutory appeals if they wished to prevent misguided acquittals from being entered.[10] But having chosen to vest its courts with the power to grant midtrial acquittals, the State must bear the corresponding risk that some acquittals will be granted in error.

_____

[9] If a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court's acquittal, because reversal would result in reinstatement of the jury verdict of guilt, not a new trial. *United States* v. *Wilson*, 420 U. S. 332 (1975).

[10] Here, the prosecutor twice asked the court for a recess to review the Michigan statutes and to discuss the question with her supervisor. 491 Mich., at 7, 810 N. W. 2d, at 538–539. If the trial court's refusal was ill-advised, that is a matter for state procedure to address, but it does not bear on the double jeopardy consequences of the acquittal that followed.

Opinion of the Court

\*     \*     \*

We hold that Evans' trial ended in an acquittal when the trial court ruled the State had failed to produce sufficient evidence of his guilt. The Double Jeopardy Clause thus bars retrial for his offense and should have barred the State's appeal. The judgment of the Supreme Court of Michigan is

*Reversed.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–1327

_____

## LAMAR EVANS, PETITIONER *v.* MICHIGAN

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
MICHIGAN

[February 20, 2013]

JUSTICE ALITO, dissenting.

The Court holds that the Double Jeopardy Clause bars petitioner's retrial for arson because his attorney managed to convince a judge to terminate petitioner's first trial prior to verdict on the specious ground that the offense with which he was charged contains an imaginary "element" that the prosecution could not prove. The Court's decision makes no sense. It is not consistent with the original meaning of the Double Jeopardy Clause; it does not serve the purposes of the prohibition against double jeopardy; and contrary to the Court's reasoning, the trial judge's ruling was not an "acquittal," which our cases have "consistently" defined as a decision that "'actually represents a resolution, correct or not, of some or all of the factual *elements of the offense charged.*'" *E.g., Smith* v. *Massachusetts*, 543 U. S. 462, 468 (2005) (quoting *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977); emphasis added). For no good reason, the Court deprives the State of Michigan of its right to have one fair opportunity to convict petitioner, and I therefore respectfully dissent.

## I

After Detroit police officers heard an explosion at a burning house, they observed petitioner running away from the building with a gasoline can. The officers pur-

sued and ultimately apprehended petitioner, who admitted that he had burned down the house. No one was living in the house at the time of the fire.

If the house in question had been a "dwelling house," petitioner could have been charged under Mich. Comp. Laws §750.72 (1981) for burning a dwelling, an offense punishable by imprisonment for up to 20 years. But petitioner was instead charged with "[b]urning other real property" in violation of Mich. Comp. Laws §750.73. This offense, which carries a maximum penalty of 10 years' imprisonment, applies to "[a]ny person who wilfully or maliciously burns any building or other real property . . . other than those specified in [§750.72]." This crime is a lesser included offense of the crime of burning a dwelling house. The "necessary elements to prove either offense are the same, except to prove the greater [offense] it must be shown that the building is a dwelling." 491 Mich. 1, 19–20, 810 N. W. 2d 535, 545–546 (2012) (internal quotation marks omitted). To prove the lesser offense, however, "'it is not necessary to prove that the building is *not* a dwelling.'" *Id.*, at 20, 810 N. W. 2d, at 546 (emphasis added).

At the close of the prosecution's case, petitioner's attorney moved for a directed verdict on the ground that (1) the prosecution was required to prove, as an "element" of the charged offense, that "the building was *not* a dwelling" and (2) "the prosecution had failed to prove that the burned building was not a dwelling house." *Id.*, at 5, 810 N. W. 2d, at 537. The prosecutor responded by arguing that nothing in the charged offense requires proof that the building was not a dwelling, and the prosecutor requested "a moment" to "pull the statute" and "consult with [her] supervisors." *Id.*, at 5–7, 810 N. W. 2d, at 537–539. The trial judge denied the prosecutor's requests and erroneously concluded that the prosecution was required to prove that the burned building was not a dwelling. After deter-

mining that the State had not proved this nonexistent "element," the trial judge granted petitioner's motion for a directed verdict and entered an order that it labeled an "[a]cquittal." App. to Pet. for Cert. 72.

The trial judge's ruling was plainly wrong, and on appeal, defense counsel did not even attempt to defend its correctness, conceding that the judge had "wrongly added an extraneous element to the statute" under which his client was charged. 491 Mich., at 3, 810 N. W. 2d, at 536; see also 288 Mich. App. 410, 416, and n. 2, 794 N. W. 2d 848, 852, and n. 2 (2010). The Michigan Court of Appeals agreed with this concession and went on to hold that the trial judge's ruling did not constitute an "acquittal" for double jeopardy purposes because the ruling did not represent "a resolution in the defendant's favor . . . of a factual element necessary for a criminal conviction." *Id.*, at 421–422, 794 N. W. 2d, at 856 (internal quotation marks omitted). The Michigan Supreme Court affirmed, holding that when, as here, a trial judge erroneously adds an extra "element" to a charged offense and subsequently determines that the prosecution did not prove that extra "element," the trial judge's decision is not based on the defendant's guilt or innocence of the elements of the charged offense. 491 Mich., at 3–4, 19–21, 810 N. W. 2d, at 536–537, 545–546. Accordingly, the Michigan Supreme Court concluded that the judge's ruling in this case "does not constitute an acquittal for the purposes of double jeopardy and retrial is . . . not barred." *Id.*, at 4, 810 N. W. 2d, at 537.

## II

This Court now reverses the decision of the State Supreme Court, but the Court's holding is supported by neither the original understanding of the prohibition against double jeopardy nor any of the reasons for that prohibition.

A

The prohibition against double jeopardy "had its origin in the three common-law pleas of *autrefois acquit*, *autrefois convict*, and pardon," which "prevented the retrial of a person who had previously been acquitted, convicted, or pardoned for the same offense." *United States* v. *Scott*, 437 U. S. 82, 87 (1978); see *Crist* v. *Bretz*, 437 U. S. 28, 33 (1978). As the Court has previously explained, "the common-law protection against double jeopardy historically applied only to charges on which a *jury* had rendered a *verdict*." *Smith*, 543 U. S., at 466 (emphasis added).[1] As a result, the original understanding of the Clause, which is "hardly a matter of dispute," *Scott*, *supra*, at 87, does not compel the Court's conclusion that a defendant is acquitted for double jeopardy purposes whenever a *judge* issues a *preverdict* ruling that the prosecution has failed to prove a nonexistent "element" of the charged offense.

Although our decisions have expanded double jeopardy protection beyond its common-law origins, see, *e.g., Smith*, *supra*, at 466–467 (acknowledging the Court's expansion of "the common-law protection against double jeopardy");

───────────

[1] See also *Crist*, 437 U. S., at 33 ("The Fifth Amendment guarantee against double jeopardy derived from English common law, which followed . . . the relatively simple rule that a defendant has been put in jeopardy only when there has been a conviction or an acquittal—after a complete trial. . . . And it is clear that in the early years of our national history the constitutional guarantee against double jeopardy was considered to be equally limited in scope"); 3 J. Story, Commentaries on the Constitution of the United States §1781, p. 659 (1833) ("The meaning of [the Double Jeopardy Clause] is, that a party shall not be tried a second time for the same offence, after he has once been convicted, or acquitted of the offence charged, *by the verdict of a jury*, and judgment has passed thereon for or against him. *But it does not mean, that he shall not be tried for the offence a second time, if the jury have been discharged without giving any verdict* . . . ." (emphasis added)); 2 M. Hale, Pleas of the Crown 246 (1778) ("It must be an acquittal upon trial either by verdict or battle").

*Crist*, *supra*, at 33–34, I nonetheless count it significant that the result the Court reaches today finds no support in the relevant common-law analogues that "lie at the core of the area protected by the Double Jeopardy Clause," see *Scott*, 437 U. S., at 96. And given how far we have departed from the common-law principles that applied at the time of the founding, we should at least ensure that our decisions in this area serve the underlying *purposes* of the constitutional prohibition against double jeopardy. See *id.*, at 95–96, 100–101. Yet today's decision fails to advance the purposes of the Double Jeopardy Clause.

### B

The Double Jeopardy Clause is largely based on "the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Yeager* v. *United States*, 557 U. S. 110, 117–118 (2009) (internal quotation marks omitted); see also *Blueford* v. *Arkansas*, 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 5); *Martin Linen*, 430 U. S., at 569. Allowing retrial in the circumstances of the present case would not result in any such abuse. The prosecution would not be afforded a second opportunity to persuade the factfinder that its evidence satisfies the actual elements of the offense. Instead, because the trial judge's ruling in the first trial was not based on an actual element of the charged offense, retrial would simply give the prosecution one fair opportunity to prove its case.

Allowing retrial in this case would not permit prosecutors "to make repeated attempts to convict an individual for an alleged offense," *Yeager*, *supra*, at 117. It was

*petitioner,* not the prosecutor, who sought to terminate the trial prior to verdict. Thus, contrary to the Court's unexplained suggestion, see *ante,* at 5–6, "[t]his case hardly presents the specter of 'an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact.'" *Sattazahn* v. *Pennsylvania,* 537 U. S. 101, 114–115 (2003) (quoting *Scott, supra,* at 96). On the contrary, this is a case in which defense counsel fooled the judge into committing an error that provided his client with an undeserved benefit, the termination of a trial that the defense obviously did not want to run to completion. The Double Jeopardy Clause does not require that the defense receive an even greater benefit, the protection provided by an acquittal.

As this Court has repeatedly emphasized in double jeopardy cases, a State has an interest in receiving "one complete opportunity to convict those who have violated its laws," *Sattazahn, supra,* at 115 (internal quotation marks omitted); *Scott, supra,* at 100, but today's decision deprives the State of Michigan of this valuable right.

C

The Court's decision also flies in the face of our established understanding of the meaning of an acquittal for double jeopardy purposes. The Double Jeopardy Clause provides that no person shall "be subject for the same *offence* to be twice put in jeopardy of life or limb." U. S. Const., Amdt. 5 (emphasis added). Thus, "[d]ouble-jeopardy analysis focuses on the individual 'offence' charged." *Smith,* 543 U. S., at 469, n. 3. And to determine what constitutes "the individual 'offence' charged," *ibid.,* the Court homes in on the elements of the offense. See *United States* v. *Dixon,* 509 U. S. 688, 696 (1993) ("In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two of-

fenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies"). Consistent with the constitutional text's focus on the "offence"—and thus the elements—with which a defendant is charged, the Court's "double-jeopardy cases have consistently" defined an acquittal as a decision that "'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Smith*, *supra*, at 468 (quoting *Martin Linen*, *supra*, at 571); see also *Scott*, *supra*, at 97 ("[A] defendant is acquitted only when the ruling of the judge, whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged" (internal quotation marks and brackets omitted)).

Today, the Court effectively abandons the well-established definition of an acquittal. Indeed, in the face of our repeated holdings that an acquittal for double jeopardy purposes requires a "resolution, correct or not, of some or all of the factual elements of the offense charged," *Smith*, *supra*, at 468; *Martin Linen*, *supra*, at 571; see also *Scott*, *supra*, at 97, the Court now declares that "the touchstone [is] *not* whether any particular elements were resolved," *ante*, at 10 (emphasis added). Instead, the Court proclaims that the dispositive question is whether a midtrial termination represented a "procedural dismissa[l]" or a "substantive rulin[g]," *ante*, at 5. This reformulation of double jeopardy law is not faithful to our precedents—or to the Double Jeopardy Clause itself. The key question is not whether a ruling is "procedural" or "substantive" (whatever those terms mean in this context), but whether a ruling relates to the defendant's factual guilt or innocence with respect to the "offence," see U. S. Const., Amdt. 5—and thus the elements—with which he is charged. See *Scott*, *supra*, at 87, 97–99, and n. 11.

When a judge evaluates the evidence and determines

that the prosecution has not proved facts that are legally sufficient to satisfy the actual elements of the charged offense, the ruling, however labeled, represents an acquittal because it is founded on the defendant's factual innocence. See *Martin Linen*, 430 U. S., at 572. But when a judge manufactures an additional "element" of an offense and then holds that there is insufficient evidence to prove that extra "element," the judge has not resolved the defendant's "factual guilt or innocence" as to any of the actual elements of the offense.[2] Thus, the ruling, no matter what the judge calls it, does not acquit the defendant of the offense with which he is charged. No acquittal occurs when a criminal trial is terminated "on a basis unrelated to factual guilt or innocence of the offense of which [a defendant] is accused." *Scott*, 437 U. S., at 87, 94–95, 98–99. "[I]n a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant." *Id.,* at 98–99 (reasoning that, in such a case, the defendant was "neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him").

---

[2] Because culpability for an offense can be negated by proof of an affirmative defense, the Court has held that a ruling that the prosecution did not submit sufficient evidence to rebut an affirmative defense constitutes an acquittal for double jeopardy purposes. See *Burks* v. *United States*, 437 U. S. 1, 10–11 (1978); *Scott*, 437 U. S., at 97–98. Thus, as used in this opinion, the "elements" of an offense include legally recognized affirmative defenses that would negate culpability.

### III

Contrary to the Court's opinion, its decision in this case is not supported by prior precedent. In all three of the principal cases on which the Court relies—*Smalis* v. *Pennsylvania*, 476 U. S. 140 (1986); *Smith*, 543 U. S. 462; and *Arizona* v. *Rumsey*, 467 U. S. 203 (1984)—trial judges ruled that the prosecution had failed to introduce sufficient evidence to prove one or more of the *actual* elements of the offenses in question. In none of these cases (and in none of our other double jeopardy cases) did a trial judge terminate a prosecution before verdict based on an element of the judge's own creation.

The first two cases, *Smalis* and *Smith,* involved garden variety preverdict acquittals, *i.e.*, rulings based on the ground that the prosecution had failed to introduce sufficient evidence to prove one or more of the *actual* elements of an offense. (Using conventional modern terminology, Rule 29(a) of the Federal Rules of Criminal Procedure explicitly labels such rulings "acquittal[s].")

In *Smalis,* the judge, at the close of the prosecution's case in chief, granted a demurrer with respect to certain charges on the ground that the evidence regarding those charges was "legally insufficient to support a conviction." 476 U. S*.,* at 141. The State Supreme Court held that this ruling was not an acquittal for double jeopardy purposes because it was based on a legal determination (*i.e.*, that the evidence was not sufficient) rather than a factual finding, but we rejected that distinction. *Id.*, at 143–144. See also *Sanabria* v. *United States*, 437 U. S. 54, 71–72 (1978).

*Smith* involved a similar situation. There, one of the elements of a firearms offense with which the defendant was charged required proof that the gun "had a barrel 'less than 16 inches' in length," 543 U. S., at 464, and the trial judge dismissed this charge before verdict on the ground that the prosecution had not introduced sufficient evi-

dence to establish this undisputed element, *id.*, at 464–
465.  Before the remaining charges were submitted to the
jury, however, the judge reversed this ruling and allowed
the charge to go to the jury.  *Id.,* at 465.  We held, how-
ever, that the judge's prior ruling constituted an acquittal
and therefore barred the defendant's conviction for this
offense.  *Id.,* at 467–469.  Thus, both *Smalis* and *Smith*
involved rulings that were very different from the one at
issue here.  In both of those earlier cases, the trial judges
held that the evidence was insufficient to prove undis-
puted elements of the offenses in question.  In neither case
did the judge invent a new element.

The final case, *Rumsey*, differs from *Smalis* and *Smith*
in only one particular.  Like *Smalis* and *Smith*, *Rumsey*
involved a ruling that the prosecution's evidence was in-
sufficient to prove an element, but in *Rumsey* the ruling
was predicated on a misconstruction of an element.  In
that case, after the defendant was found guilty of first-
degree murder, the "trial judge, with no jury, . . . con-
ducted a separate sentencing hearing" at which he deter-
mined that no aggravating circumstances were present.  467
U. S., at 205.  In particular, the judge found that the
prosecution had not proved that the murder had been
committed "'as consideration for the receipt, or in expecta-
tion of the receipt, of anything of pecuniary value.'"  *Id.,* at
205–206 (quoting Ariz. Rev. Stat. Ann. §13–703(F)(5)
(Supp. 1983–1984)).  The judge reached this conclusion
because, in his (incorrect) view, that aggravating circum-
stance was limited to contract killings.  467 U. S., at 205–
206.  Holding that the judge's ruling constituted an acquit-
tal on the merits of the question whether a death sentence
was appropriate, we noted that the ruling rested on "a
misconstruction of the statute defining the pecuniary gain
aggravating circumstance."  *Id.*, at 211.  Accordingly, the
ruling was based on a determination that there was insuf-
ficient evidence to prove a real element; it was not based

on the judicial invention of an extra "element."  And for that reason, it does not support the nonsensical result that the Court reaches today.

The Court may feel compelled to reach that result because it thinks that it would be unworkable to draw a distinction between a preverdict termination based on the trial judge's misconstruction of an element of an offense and a preverdict termination based on the judge's perception that a statute contains an "element" that is actually nonexistent.  This practical concern is overblown.  There may be cases in which this determination presents problems, but surely there are many cases in which the determination is quite easy.  The present case is a perfect example, for here there is no real dispute that the trial judge's ruling was based on a nonexistent statutory "element."  As noted, defense counsel conceded on appeal that the judge had "wrongly added an extraneous element to the statute" under which his client was charged.  491 Mich., at 3, 810 N. W. 2d, at 536.

Another good example is provided by *State* v. *Korsen*, 138 Idaho 706, 69 P. 3d 126 (2003), where a Magistrate erroneously concluded that the offense of criminal trespass under Idaho law requires a showing that the defendant did something to justify the property owner's request for the defendant to leave the premises.  *Id.,* at 710, 716–717, 69 P. 3d, at 130, 136–137.  There is no question that the Magistrate in *Korsen* "effectively created an additional statutory element" before concluding that the prosecution had presented insufficient evidence as to this purported "element."  See *ibid.* (holding that double jeopardy did not bar a retrial because the Magistrate's "finding did not actually determine in [defendant's] favor any of the essential elements of the crime of trespass").

Cases in which it can be said that a trial judge did not simply misinterpret a real element of an offense but instead invented an entirely new and nonexistent "element"

are cases in which the judge's error is particularly egregious.  Permitting retrial in these egregious cases is especially appropriate.

\*     \*     \*

I would hold that double jeopardy protection is not triggered by a judge's erroneous preverdict ruling that creates an "element" out of thin air and then holds that the element is not satisfied.  I therefore respectfully dissent.