J-S35012-22

2023 PA Super 105

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL T. MARTIN, JR. | : | No. 791 MDA 2022 |

Appeal from the Order Entered May 13, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002065-2019

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED: JUNE 12, 2023**

The Commonwealth appeals from the trial court's May 13, 2022 order granting the post-sentence motions filed by Appellee, Michael T. Martin, Jr; vacating the jury's August 31, 2021 verdict finding Appellee guilty of involuntary deviate sexual intercourse with a child ("IDSI") and indecent assault,[1] with prejudice; and discharging him from custody. Following our careful review, we reverse the trial court's order granting Appellee's post-sentence motions and remand this case to the trial court with instructions to enter an order reinstating the jury's guilty verdict and re-committing Appellee to serve the balance of his sentence.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(b) and 3126(a)(7), respectively.

The trial court summarized the relevant facts and procedural history of this case as follows:

> Sometime in 2019, eleven-year-old J.K. indicated to her mother that [Appellee, her uncle,] had behaved inappropriately with her sexually. After an interview at Over the Rainbow Children's Advocacy Center, which lasted just under an hour, J.K. did not disclose any abuse. However, on November 16, 2019, in a thirty-minute interview with the same interviewer, J.K. disclosed several incidents of abuse. As a result of her second interview, on November 25, 2019, [Appellee] was charged with one count of [IDSI], a felony of the first degree, and Indecent Assault of a Person Less than 13 Years of Age, a felony of the third degree. The offense date listed for each of these offenses is September 11, 2013, although the Commonwealth acknowledges repeatedly, as discussed below, that this date was set arbitrarily.
>
> After numerous continuances due to the COVID-19 pandemic, [a jury] trial on these charges commenced on August 31, 2021, and [Appellee] was convicted. [Appellee] was sentenced on December 15, 2021, to an aggregate sentence of 75 to 150 months in a State Correctional Institution. That same day, [Appellee] filed three [post-sentence] motions. The first was a Motion for Bail Pending Appeal, which was ultimately denied following a hearing. The second and third, filed together as Post Sentence-Motions Filed on Behalf of [Appellee], included the instant Motion Alleging Verdict was Against the Weight of the Evidence and Motion Alleging Verdict was Against the Sufficiency of the Evidence. Oral argument on the instant Motions occurred on February 2, 2022, after which we Ordered the parties to submit briefs. [Appellee] timely submitted his brief on February 11, 2022. The Commonwealth untimely submitted their brief on March 11, 2022, nine (9) days after their deadline set by Order of Court dated February 2, 2022.
>
> On April 6, 2022, [Appellee] filed a Motion Requesting Order of Court Granting Court Extension of Time,

> requesting that we grant ourselves an additional thirty (30) days to render a decision for good cause[….] We found good cause to have been shown because we had only twenty-four (24) weekdays to render a decision following the filing of the Commonwealth's brief, which was not sufficient time due to the nature of the Court's calendar. Therefore, we granted the Motion, extending our deadline to May 14, 2022.

Trial court opinion, 5/13/22 at 2-3 (footnotes, internal citations, and emphasis omitted).

On May 13, 2022, the trial court entered an opinion and order granting Appellee's post-sentence motions. Within this opinion and order, the trial court found the weight and sufficiency of the evidence did not support Appellee's convictions for IDSI and indecent assault. Therefore, the trial court vacated the jury's verdict with prejudice. *See id.*

The Commonwealth filed a timely notice of appeal on May 20, 2022. On May 25, 2022, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). The Commonwealth filed its timely Rule 1925(b) statement on June 13, 2022. On June 15, 2022, the trial court filed a Rule 1925(a) opinion, incorporating the analysis in the opinion authored in support of its May 13, 2022 order granting Appellee's post-sentence motions.

Thereafter, on July 21, 2022, Appellee filed a motion seeking to either quash the Commonwealth's appeal or find the issues waived due to the Commonwealth's purported failure to comply with Rule 1925(b). On August

2, 2022, the Commonwealth filed a response. On September 29, 2022, Appellee's motion to quash was denied by **per curiam** order of this Court.

On appeal, the Commonwealth raises the following issues for our review:

> 1. Whether the trial court erred when it granted [Appellee's] post-sentence motions on the basis that the Commonwealth failed to present sufficient evidence at trial to warrant the jury's verdict of guilty to one count each of [IDSI] and indecent assault of a person less than 13 years of age?
>
> 2. Whether the trial court erred when it granted [Appellee's] post-sentence motions on the basis that the jury's verdict was against the weight of the evidence?

Commonwealth's Brief at 4 (extraneous capitalization omitted).

Prior to addressing the merits of the Commonwealth's claims, we must first address Appellee's contention that the May 13, 2022 order is unappealable because it risks subjecting him to retrial in violation of double jeopardy principles. Appellee's brief at 7-9.

It is well settled that "the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is based upon an egregiously erroneous foundation." **Evans v. Michigan**, 568 U.S. 313, 318 (2013) (citation and internal quotation marks omitted). The same is not true when a trial court grants a motion for discharge after the jury has convicted. The difference is the latter scenario does not involve an acquittal, and thus no retrial will occur. Thus, a ruling in favor of the Commonwealth on appeal

merely restores the jury's verdict. *See id.* at 330, n.9 (stating, "[i]f a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court's acquittal, because reversal would result in reinstatement of the jury verdict of guilt, not a new trial."). This Court has recognized that "[t]he law in Pennsylvania is consistent with the federal decisions." *Commonwealth v. Feathers*, 660 A.2d 90, 94 (Pa.Super. 1995) (*en banc*), *affirmed*, 683 A.2d 289 (Pa. 1996).

Appellee's argument that the May 13, 2022 order is not appealable is confusing; the bulk of his argument discusses the "critical distinction between challenges to the weight of the evidence and the sufficiency of the evidence." Appellee's Brief at 7. Appellee quotes caselaw holding that claims "challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution[.]" *Id.* at 7-8; *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Appellee misapprehends the relevance of these observations. The quoted portion of *Widmer* merely discusses what happens if an appellate court determines and/or agrees with a trial court that the evidence was insufficient to convict. In that case, retrial is barred. But here the question is simply whether the trial court was correct that the jury's verdict is unsupported by sufficient evidence. Because Appellee was not acquitted, the order is appealable. We now turn to the Commonwealth's claims on appeal, which can be divided into three distinct subsections.

**I.**

The Commonwealth first argues that in assessing the sufficiency of the evidence, the trial court improperly engaged in a ***sua sponte*** examination of the legal issues discussed in ***Commonwealth v. Devlin***, 333 A.2d 888 (Pa. 1975) and its progeny. Commonwealth's brief at 15. The Commonwealth avers that Appellee's post-sentence motions did not in any way challenge that aspect of the Commonwealth's case. ***Id.***

In the instant matter, the trial court's sufficiency analysis focused primarily on three cases: ***Devlin***, ***supra***; ***Commonwealth v. Groff***, 548 A.2d 1237 (Pa.Super. 1988); and ***Commonwealth v. Jette***, 818 A.2d 533 (Pa.Super. 2003), ***appeal denied***, 833 A.2d 141 (Pa. 2003). ***Devlin*** involved a victim who "had the mental ability of a first or second grade child and the emotional stability of an even younger child." ***Devlin***, 333 A.2d at 889. In ***Devlin***, the victim stated that Devlin had sexually assaulted him on one occasion but could not place the date. Other evidence suggested that if the act occurred it would have been over a fourteen-month period. The ***Devlin*** court held that Devlin's due process rights were violated and ordered discharge.

***Groff*** involved a seven-year-old child testifying to multiple sexual crimes that all occurred "on only one occasion." ***Groff***, 548 A.2d at 1239. Applying ***Devlin***, the ***Groff*** Court held that the Commonwealth "should … come forward with any evidence which indicates when the alleged crime is

most likely to have taken place." *Id.* at 1241. The *Groff* Court further concluded that Groff's due process rights were not violated because the Commonwealth presented other evidence narrowing the timeframe down to a three-month period.

Finally, in *Jette*, the appellant was convicted of, *inter alia*, one count of IDSI. The victim, who was eight-years old at the time of the incidents, testified to a continuing course of sexual abuse, detailing "four of the worst incidents, [and] describing generally when they occurred by month and generally what time of the year." *Jette*, 818 A.2d at 535. The *Jette* Court affirmed the convictions, concluding that the Commonwealth "must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Id.*, quoting *Groff*, 548 A.2d at 1242.

Here, the trial court found that "the Commonwealth failed to meet its burden to prove a continuing course of conduct in a case involving the abuse of a young child pursuant to [*Jette*]." Trial court opinion, 5/13/22 at 1. Alternatively, "even if the Commonwealth had proven a continuing course of conduct," the trial court concluded that the Commonwealth was not entitled to "'the broad leeway' afforded to them in setting the approximate time and place[.]" *Id.* Finally, "even if the Commonwealth had proceeded at trial under a theory pursuant to [*Groff*]," the trial court determined that the

Commonwealth failed to meet its burden to provide corroborating evidence. *Id.*

Following our careful review, we agree with the Commonwealth's contention that the trial court erred by engaging in a *sua sponte* examination of legal issues that were not raised by Appellee. We begin our analysis of this issue by quoting Appellee's post-sentence motion for relief:

> 6. [Appellee] alleges that the verdict was against the sufficiency of the evidence.
>
> 7. The law related to said claim is as follows:
>
>    a) It is appropriate for the trial court to determine if the evidence presented at trial was sufficient to support the verdict. *Commonwealth v. Martin*, [101 A. 3d 706 (Pa. 2019)].
>
>    b) The court must review the evidence in the aggregate in order to determine the propriety of the Defendant's motion. In *Interest of J.B.*, [189 A.3d 390 (Pa. 2013)].

Post-Sentence Motions, 12/15/21, at unnumbered 2-3 (citation formatting amended).

Appellee's motion then cited a series of facts in paragraph eight, all of which may fairly be summarized as attacking the plausibility of J.K.'s testimony. The motion concluded:

> 9. Applying the law and facts, as set forth above, warrant[s] relief for [Appellee]. It is clearly evident that the evidence against the defendant was "tenuous," "vague," and "uncertain[,]" *Commonwealth v. Talbert*, [129 A.3d 536

- 8 -

(Pa.Super. 2015)], and [the verdict] was so contrary to the evidence as to sho[ck] one's sense of justice. *Commonwealth v. Morales*, [91 A.2d 80 (Pa. 2014)]. It is imperative that the [c]ourt enter a directed verdict or one of aquital [sic] so that right may be given another opportunity to prevail. *Commonwealth v. Antidormi*, [84 A.3d 736 (Pa.Super. 2014)]. To fail to do such would be to deny justice. *Commonwealth v. Green*, [204 A.3d 469 (Pa.Super. 2019)]; *Commonwealth v. Williams*, [176 A.3d 298 (Pa.Super. 2017)]; *Commonwealth v. Miller*, [172 A.3d 632 (Pa.Super. 2017)].

Post-Sentence Motions, 12/15/21, at unnumbered 6 (citation formatting amended).

While styled as a sufficiency claim, both the facts cited in support of Appellee's claim and the law in support largely attack the weight of the evidence. An argument that goes purely to weight, even if styled as sufficiency, necessarily fails. *See Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (stating, "[a]lthough [the] appellant phrases this as a sufficiency argument, the challenge goes to the weight of the evidence. Accordingly, [the] appellant's challenge to the sufficiency of the evidence must fail." (citation omitted)), *cert. denied*, 531 U.S. 829 (2000). That Appellee's complaints went to the weight is evident from the citations in the ninth paragraph of his post-sentence motions. The complete sentence Appellee cited from *Talbert* states, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Talbert*, 129

A.3d at 546 (emphasis added). Similarly, the **Antidormi** citation discusses the relief applicable to a successful weight challenge, a retrial, whereas the remedy for a successful challenge on sufficiency grounds is discharge.

Even though Appellee raised, at best, only a generic sufficiency of evidence claim without reference to any element(s) of the crime, the trial court's analysis had almost nothing to do with whether the evidence would enable a rational fact-finder to convict. The "**Devlin** claim" explored by the trial court does have a connection to a general sufficiency of the evidence challenge in that both are grounded in due process. However, their commonality ends there, as **Devlin** is about the fundamental right to present a defense.

The United States Supreme Court held in **Jackson v. Virginia**, 443 U.S. 307 (1979), that the Due Process Clause as incorporated by the Fourteenth Amendment requires that all convictions be supported by "sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." **Id.** at 316. We follow that approach, as stated in **Commonwealth v. Brown**, 52 A.3d 1139 (Pa. 2012):

> First, our standard of review, like the **Jackson** standard, recognizes the proper regard an appellate court must give to the fact-finder's evaluation of all of the evidence received at trial and, therefore, requires scrutiny of the totality of that evidence in the light most favorable to the Commonwealth, as verdict winner, and to draw all reasonable inferences in favor of the Commonwealth. Further, our Court's

> determination of the ultimate question of evidentiary sufficiency parallels the central inquiry under the **Jackson** standard, namely, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**Id.** at 1164 (citations, internal quotation marks, and footnote omitted).

The **Jackson** decision protects due process in a particular way: it operates as a check on the quality of the government's evidence in proving the crimes. Separately, due process requires that the Commonwealth give fair notice in the charging instrument. "In criminal … matters, the United States Supreme Court has discerned a due process requirement that alleged misconduct must be identified with particularity in the essential notice conferred." **In re R.M.**, 790 A.2d 300, 305 (Pa. 2002). The criminal information "sets the stage for trial and what the Commonwealth intends to prove." **Commonwealth v. King**, 234 A.3d 549, 563 (Pa. 2020). This implicates basic due process protections. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." **Cole v. Arkansas**, 333 U.S. 196, 201 (1948). These due process protections are linked to the due process protections encompassed by a sufficiency-of-the-evidence claim. The charging document puts the defendant on notice of what the Commonwealth intends to prove, and, in turn, the evidence presented at trial must be of sufficient quality to

enable a rational fact-finder to conclude that the Commonwealth has proved the crimes specified within the information beyond a reasonable doubt.

The trial court addressed the fact that the criminal information encompassed a nine-month period of time and opined that this "shifted the burden" to the defense. "It is ... beyond cavil that it is the Commonwealth's burden to prove guilt, rather than the defendant's duty to establish innocence." *Commonwealth v. Kennedy*, 453 A.2d 927, 929 n.2 (Pa. 1982). The *Devlin* Court recognized that, under the circumstances of a particular case, a defendant's due process right to present a defense may be violated, but that does not shift the burden to the defendant. *Devlin*, 333 A.2d at 891 (stating, "[t]he State Constitution is violated where the defendant is substantially denied an opportunity to present a defense.") (citation omitted); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (stating, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (citation omitted). The trial court's belief that the Commonwealth "shifted tactics" midtrial is more accurately described as a potential due process violation relating to the validity of "variances" between the information and the evidence presented at trial. *See*, *e.g.*, *Berger v. United States*, 295 U.S. 78, 82 (1935) (stating, "[t]he true inquiry … is not whether there has

been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused.").

Instantly, we agree with the Commonwealth that the issues raised by Appellee in his post-sentence motion cannot be interpreted as a claim that he was denied an opportunity to present a defense. Moreover, our assessment that the legal theory explored in *Devlin* and its progeny is a distinct due process claim is corroborated by the fact those cases suggested that a defendant must preserve and raise that specific issue. The *Devlin* opinion makes clear that the appellant therein explicitly cited the inability to raise a defense, not that the evidence was insufficient to convict: "At the close of the Commonwealth's case, the defense demurred to the prosecution's evidence on the ground that the Commonwealth had not fixed the date of the crime with sufficient particularity, and thus the charge was impossible to defend." *Devlin*, 333 A.2d at 890.

Likewise, in *Jette*, the appellant therein clearly raised that specific theory: "Jette does not argue that the Commonwealth failed to prove any element of the crimes of which he was convicted. Instead, [the a]ppellant argues that the evidence was insufficient to support his conviction because the victim's testimony was not sufficiently specific regarding the dates of the incidents of abuse." *Jette*, 818 A.2d at 534. It also bears noting that the *Devlin* Court emphasized that the due process inquiry must be analyzed with reference to the specific facts of the case. *Devlin*, 333 A.2d at 892 (stating,

"[h]ere, as elsewhere, '[t]he pattern of due process is picked out in the facts and circumstances of each case.'" (citation omitted)). The Commonwealth's contention that the trial court exceeded its authority thus has substantial force, as the trial court determined ***sua sponte*** that Appellee's due process rights were violated under the facts of the case without the benefit of adversarial positions by the parties.

The trial court attempted to answer whether the convictions for two counts could stand, accepting that J.K.'s testimony was sufficient to meet the elements of the charged crimes for a subset of the entire timeframe charged. We need only determine that Appellee did not make that claim. Instead, he claimed that J.K. was not credible in total. Thus, whether a "variance" was justifiable under these circumstances or whether Appellee's ability to offer a defense was hampered were issues not raised by Appellee. Accordingly, we agree with the Commonwealth's first argument that the trial court improperly addressed issues that were not raised in Appellee's post-sentence motions.

## II.

The Commonwealth next contends that the trial court erred in granting Appellee's post-sentence motions on the basis that the Commonwealth failed to present sufficient evidence to support Appellee's convictions for IDSI and indecent assault. Commonwealth's brief at 12, 25.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as

- 14 -

verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

A person will be found guilty of IDSI "when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). "Deviate sexual intercourse" is defined as "[s]exual intercourse per os or per anus…. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S.A. § 3101.

Additionally, "[a] person is guilty of indecent assault if the person has indecent contact with the complainant … for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 13 years of age[.]" 18 Pa.C.S.A. § 3126(a)(7). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find there was ample evidence to sustain Appellee's

convictions for IDSI and indecent assault of a person less than thirteen years of age. At trial, the Commonwealth called three witnesses: J.K.; J.K.'s mother, E.A.; and Detective David Rush. The record reflects that J.K., who was fifteen-years old at the time of trial, testified that Appellee would make her perform oral sex on him, "[u]sually in the computer room." Notes of testimony, 8/31/21 at 72-75. J.K. testified that Appellee began sexually abusing her "a couple days into it in the first week" after she and her family moved into his home during the 2013 school year. *Id.* J.K. was between seven and eight-years old when these incidents took place. *Id.* at 25, 91. J.K. further testified that no one else was present in the room when these incidents took place, but the other residents of the household would "[s]ometimes … be upstairs and sometimes they would be in the outside of the house in the back yard." *Id.* at 73, 75. J.K. also stated that the incidents "would usually be in the daytime." *Id.* at 76.

On cross-examination, J.K. agreed that in a videotaped statement she said that the abuse happened every day, but clarified that "[i]t happened every other day because sometimes it would be like breaks." *Id.* at 114. J.K. testified that the abuse continued until she "said 'no' the one time and then we moved out shortly after." *Id.* at 74. J.K. further testified that she disclosed the abuse to her two sisters a few years after leaving Appellee's residence. *Id.* at 123. J.K. and her sisters then told E.A., who subsequently contacted the authorities and an investigation commenced. *Id.* at 81.

This Court has long recognized that the testimony of the complainant standing alone is sufficient to convict. "[A] solitary witness's testimony **may** establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." **Commonwealth v. Johnson**, 180 A.3d 474, 479 (Pa.Super. 2018) (emphasis in original), **appeal denied**, 205 A.3d 315 (Pa. 2019). Here, the record reflects that J.K.'s testimony that Appellee's genitals made contact with her mouth is sufficient to meet the elements of IDSI. **See, e.g., Commonwealth v. Wilson**, 825 A.2d 710, 714 (Pa.Super. 2003) (stating, "[b]ecause there was oral contact with the [a]ppellant's genitalia and the victim's mouth, we find the evidence is sufficient to establish penetration however slight."). Likewise, the same testimony meets the definition of indecent assault under Section 3126(a)(7), as it was undisputed that J.K. was under 13 at the time of these crimes. Accordingly, J.K.'s testimony that she and Appellee had oral sex on multiple occasions, if believed by the jury, was sufficient to establish both crimes.

The trial court concluded that J.K.'s testimony presented a "conundrum" because she stated, when confronted with a prior statement, that the abuse occurred every day, that it occurred every other day. Trial court opinion, 5/13/22 at 23-26. The trial court determined that this was extremely unlikely when measured against Appellee's stipulated work records. **Id.** The core problem with the trial court's analysis is that it appeared to consider the jury's ability to weigh evidence as constituting an all-or-nothing proposition. The

"conundrum" presented by J.K.'s testimony that the abuse occurred every other day and the stipulation to Appellee's work records is resolvable by concluding that a rational fact-finder could reject parts of J.K.'s testimony while accepting others. The jury could credit J.K.'s testimony that Appellee serially abused her, but not at the frequency claimed. The jury was not required to fully credit J.K.'s testimony in all respects for the conviction to be valid. The jury could have, for example, rationally concluded that J.K. was so traumatized by multiple incidents of abuse that she recalled it happening more often than it did.

The jury was not required to fully credit that aspect of J.K.'s testimony to uphold this conviction. A rational fact-finder could conclude that Appellee repeatedly abused J.K. while simultaneously concluding that it did not occur as often as J.K. stated.

The United States Supreme Court has held that "[s]ufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (citation and internal quotation marks omitted). If a jury "was convinced, … the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). We conclude that it does not in the case *sub judice*, and therefore reverse the

trial court's order discharging Appellee on the basis there was insufficient evidence to sustain the jury's verdict.

## III.

In its final claim, the Commonwealth argues that the trial court abused its discretion in granting Appellee's post-sentence motion on the basis that the jury's verdict was not supported by the weight of the evidence. Commonwealth's brief at 30. The Commonwealth contends that the trial court's analysis indicates that it improperly attempted to function as the thirteenth juror in this case by disregarding the jury's judgment and substituting its own for that of the fact-finder. *Id.* at 32. For the following reasons, we agree.

This Court has recognized that "[a]n allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Galvin*, 985 A.2d 783, 793 (Pa. 2009) (citation omitted), *cert. denied*, 559 U.S. 1051 (2010).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the

findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

. . . .

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Upon review, we disagree with the trial court's assessment that this matter was one of the exceedingly rare cases in which a jury's verdict should be vacated on weight-of-the-evidence grounds. As discussed, our Supreme Court has recognized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence…." *Id.* (citation omitted). "[A] true weight of the evidence challenge concedes that sufficient evidence exists

to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Miller***, 172 A.3d 632, 643 (Pa.Super. 2017) (citation omitted), ***appeal denied***, 183 A.3d 970 (Pa. 2018). The primary focus of such a challenge is whether "the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013) (citation omitted), ***cert. denied***, 572 U.S. 1048 (2014).

Here, the jury heard testimony from multiple Commonwealth witnesses that Appellee sexually abused J.K. The jury clearly found the testimony and evidence presented at trial credible and elected not to believe Appellee's version of the events. The trial court's opinion vigorously discusses alternative theories to explain J.K.'s inconsistent testimony, in an attempt to explain why it believes the verdict in this matter was a "shock to the conscience." ***See*** trial court opinion, 5/13/22, at 35, 38-44. In doing so, we find that the trial court plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury by substituting its own credibility determination for that of the fact-finder. ***See Clay***, ***supra***.

Based on the foregoing, we reverse the trial court's May 13, 2022 order granting Appellee's post-sentence motions and discharging him from custody, and remand this case to the trial court with instructions to enter an order reinstating the jury's guilty verdict and re-committing Appellee to serve the balance of his sentence.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judge McLaughlin joins the Opinion.

P.J.E. Bender files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023